311 P.3d 676

**STATE of Hawai'i, Respondent/Plaintiff–Appellee,**

v.

**Ricardo APOLLONIO, Petitioner/Defendant–Appellant.**

**No. SCWC–11–0000695.**

Supreme Court of Hawai'i.

Oct. 10, 2013.

354

Craig W. Jerome, (James A. Tabe on the application), for petitioner.

Brandon H. Ito, for respondent.

ACOBA, McKENNA, and POLLACK, JJ., with RECKTENWALD, C.J., concurring and dissenting, with whom NAKAYAMA, J., joins.

Opinion of the Court by ACOBA, J.

We hold that because the charge of Excessive Speeding, Hawaiʻi Revised Statutes (HRS) § 291C–105(a)(1) (Supp.2010), against Petitioner/Defendant–Appellant Ricardo Apollonio (Petitioner) did not allege that Petitioner acted intentionally, knowingly, or recklessly it failed to allege the requisite state of mind. *State v. Nesmith,* 127 Hawaiʻi 48, 56, 276 P.3d 617, 625 (2012). Therefore, for the reasons stated herein, we vacate the August 22, 2012 judgment of the ICA, which affirmed the August 23, 2011 Notice of Entry of Judgment and/or Order and Plea/Judgment of the district court of the first circuit [1] (the court) and the court's aforesaid judgment, and remand the case to the court for dismissal without prejudice. Because of the likelihood of retrial, we also conclude that Respondent/Plaintiff–Appellee State of Hawaiʻi (Respondent) failed to lay an adequate foundation to admit the laser instrument (laser gun or laser) reading of Petitioner's vehicle's speed into evidence.

1. The Honorable Lono Lee presided.

## I.

### A.

On August 23, 2011, Petitioner was orally arraigned and charged in the court with excessive speeding, as aforesaid. The charge alleged as follows:

On or about July 1st, 2010, in the City and County of Honolulu, State of Hawai'i, you did drive a motor vehicle at a speed exceeding the applicable state or county speed limit by 30 miles per hour or more by driving 76 miles per hour in a 35-mile-per-hour zone, thereby violating Section 291C–105, subsection (a)(1)(C)([2]) of the [HRS], as you have had one prior conviction within a five-year period.

Petitioner did not object to the oral charge.[2]

The HPD officer involved (the officer) testified that on July 1, 2010, he cited Petitioner for excessive speeding. On that date, a LTI 20–20 laser gun was used to measure the speed of Petitioner's vehicle.

The officer was trained in October 2006 by Sergeant Ryan Nishibun. His training consisted of "class work, going over the operator's manual, and hands-on time with the laser itself." He maintained that the operator's manual was "provided by [LTI]." Defense counsel objected to this testimony due to "lack of personal knowledge and hearsay." The court overruled the objection, stating that "those issues have been resolved in some other case."[3]

According to the officer, the manual stated that four tests[4] were necessary to establish that the laser gun was working properly. All four tests were performed on the date in question and indicated the laser was working properly. The officer stationed himself on the shoulder of Kamehameha Highway south of Punalau Place. The speed limit in the area was thirty-five miles per hour (mph). His laser gun indicated that Petitioner's vehicle was traveling at a speed of 76 mph. Based on the speed reading, Petitioner's vehicle was stopped and Petitioner cited.

On cross-examination, the officer explained that the people who trained him were "all HPD officers," and that "there was nobody from LTI present." He related that the front cover of the manual "may have" had the HPD emblem stamped on it. The manual was provided by an HPD officer. He "[did not] know the person who wrote the manual," and "[did not] know" if the manual was "written or compiled by the [HPD]."

Based on this testimony, Petitioner renewed his motion to strike the speed reading based on a lack of foundation. Petitioner argued that the officer "[did] not recall what the manual looks like," "[did] not know who prepared the manual," and was "not able to say where or what the manual was prepared in accordance with." The court rejected the motion, stating that "[t]he court has also heard that that was [sic] the manuals provided by HPD in conjunction with LTI as part of [the officer's] training at the [police] academy. So the court will give it its due weight."

Petitioner continued cross-examination "with a few questions based on the court's ruling." The officer indicated he "assume[d] that somebody [from LTI] had to have provided [the manual]," but that he "[did not] know personally whether anybody from LTU

---

2. Prior to trial, Petitioner filed a Motion to Compel Discovery, asking Respondent to disclose, *inter alia*, "[t]he Operator's Manual for the specific laser gun used in this case," and "[t]he [Honolulu Police Department (HPD)] training manual for speeding citations." [(Petitioner's) Motion to Compel (Traffic Court docket number 23) at 3] In response, Respondent pointed out that the HPD had "loaned to the Department of the Prosecuting Attorney one copy each of: 1) the operator manual for the Marksman; 2) the HPD training manual, and 3) the operator manual for the [Laser Technologies, Inc. (LTI)] 20/20 UltraLyte, all provided by [LTI]." Further, "[o]n October 28, 2009, the DPA made those three manuals available for review by defense counsel." Respondent contended that Petitioner could not make copies of the manuals due to copyright laws. However, the court issued a protective order allowing Petitioner to review and make one copy of each manual that Petitioner requested Respondent to disclose. The manuals are not a part of the record.

3. The court did not specify what case it relied upon.

4. The four tests are the self-test, the display test, the scope alignment test, and the delta distance test.

provided these manuals to [HPD]." (Emphases added). Further, "[w]hen [he] testified on direct examination [that he was] ... trained in accordance with the manual that LTI provided, that was just based on [his] assumption that somebody from LTI must have provided [the manual]." (Emphasis added.) Petitioner then asked the witness about the maintenance of the laser gun. The officer testified that he had "no idea" if there were "any software upgrades that would have been provided" for the laser gun.

On redirect examination, the officer testified that he "pass[ed] the [training] course" provided by HPD, and was "qualified to use the [laser gun]." Defense counsel objected that the officer did not have personal knowledge regarding whether or not he was qualified. The court overruled the objection. Petitioner conducted recross-examination and then renewed his motion to strike, arguing that the officer "has no personal knowledge [of] who provided the manual." The court again denied the motion.

### B.

Petitioner testified that on July 1, 2010, he was traveling northbound on Kamehameha Highway. He explained that before being pulled over he was "looking at his [speedometer] the whole time" and that he was never traveling faster than 60 mph. He also recounted that he was speeding because "he had to [use] the bathroom really bad." On cross-examination, Petitioner admitted that he did not know whether his speedometer was working properly.

### C.

In closing argument, Petitioner stated "that [the officer] testified on direct that he was trained in accordance with the manufacturer's specification[s]," but that on cross-examination, [the officer] admitted that "he had no personal knowledge as to whether or not he actually was." Petitioner also contended that the excessive speeding statute required Respondent to demonstrate that Petitioner recklessly traveled 30 mph faster than the speed limit, and because Petitioner testified that his speedometer indicated he was traveling at 60 mph, Respondent had not

established that Petitioner was reckless as the statute required.

### D.

The court found Petitioner guilty as charged, holding that it "heard credible testimony from [the officer] regarding his training and qualifications," and that the officer "followed the manufacturer's instructions" to ensure that the laser gun was working properly. Addressing mens rea, the court found that the relevant state of mind was "intentional, knowing, or reckless," and that "the court can infer from the circumstances that traveling at that speed, at the minimum, is reckless."

### II.

### A.

Petitioner appealed to the ICA. According to Petitioner, the only evidence introduced regarding the manufacturer's recommendations for testing the laser gun or training officers was provided by the manual, and the officer did not have personal knowledge that the manual was provided by LTI. On this basis, Petitioner argued that Respondent failed to lay an adequate foundation for introducing the speed reading from the laser gun.

Petitioner also maintained that an adequate foundation was not laid because *State v. Manewa*, 115 Hawai'i 343, 167 P.3d 336 (2007), required Respondent to introduce evidence that "the instrument has been inspected and serviced as required by the manufacturer." (Citing *State v. Assaye*, 121 Hawai'i 204, 217, 216 P.3d 1227, 1240 (2009) (Acoba, J. concurring).)

### B.

The ICA held that adequate foundation had been established to admit the speed reading. The ICA noted that the officer received eight hours of training from the HPD, "confirmed that during training he was provided with a training manual, which he acknowledged was provided by [LTI]" and testified that during training he was "taught [four] tests recommended by the manufactur-

er to determine whether the laser was working properly." *State v. Apollonio*, No. CAAP–11–0000695, 128 Hawai'i 129, 2012 WL 2894715, at *2 (App. July 16, 2012). According to the ICA, "[e]vidence from [the officer's] testimony" "confirmed that he performed these four tests on the laser gun on July 1, 2010, and that the results of the tests indicated that the laser was operating correctly." *Id.*

Further, the officer explained that the manual he received as a part of his training " 'said Operator's Manual, LTI 20–20 Operator's Manual,' " although "[the officer] later agreed that the manual cover may also have stated 'Honolulu Police Department' [or contained an HPD logo]." *Id.* He "could not definitely say that the manual was not written or compiled by HPD." *Id.* The ICA concluded that, "[i]n light of the foregoing, the officer's testimony was sufficient to establish that 'the nature and extent of [his] training ... meets the requirements indicated by the manufacturer.' " *Id.* (Quoting *Assaye*, 121 Hawai'i at 215, 216 P.3d at 1238.)

Addressing *Manewa*, the ICA held that once the laser is tested in accordance with procedures recommended by the manufacturer, "the *Assaye* majority did not require any further showing of inspection and service as required by the manufacturer." *Id.* Therefore, the ICA rejected Petitioner's argument that Respondent was required to demonstrate that the manufacturer had properly serviced the laser gun. *Id.*

### III.

Petitioner presents the following questions in his Application:

1. Whether the ICA's order affirming [Petitioner's] conviction constitutes an obvious inconsistency with [this court's] April 12, 2012 decision in [*Nesmith*, 127 Hawai'i 48, 276 P.3d 617].

2. Whether the ICA gravely erred in holding that [Respondent] laid sufficient foundation for the admission of the laser gun reading.

On November 7, 2012, Respondent filed a Response to Petitioner's Application (Response). On November 13, 2012, Petitioner filed a Reply.

### IV.

#### A.

In connection with his first question, Petitioner argues that "[t]he oral charge [ ] failed to allege the intentional, knowing, and reckless states of mind required to alert the defendant[ ] of precisely what [he] needs to defend against to avoid a conviction." [5] (Citing *Nesmith*, 127 Hawai'i at 56, 276 P.3d at 625.) Additionally, Petitioner argues that "the oral charge was fatally defective under Hawai'i Rules of Penal Procedure (HRPP) Rule 7(d)," [6] because "state of mind was an 'essential fact,' which was required to be alleged." Finally, according to Petitioner, due to the lack of mens rea in the charge, "the [ ] court lacked jurisdiction over the case." (Citing *State v. Cummings*, 101 Hawai'i 139, 142, 63 P.3d 1109, 1112 (2003).)

#### B.

In its Response, Respondent argues that "[t]he *Nesmith* majority's holding that mens rea must be alleged in a charge was based on its reasoning that 'a charge omitting the mens rea requirements would not alert a defendant that negligently operating a vehicle under the influence of an intoxicant ... for instance is not an offense recognized [by statute].' " (Quoting *Nesmith*, 127 Hawai'i at 56, 276 P.3d at 625.) "In other words," Respondent contends, *Nesmith* held that the "state of mind must be included in the charge to 'alert the defendants [ ] [of] precisely what they needed to defend against to avoid a

---

5. The concurring and dissenting opinion (dissenting opinion) contends that "[i]t was not until the case reached this court that, for the first time, [Petitioner] contended that the charge was inadequate." Dissenting opinion at 364, 311 P.3d at 687. *Nesmith* was filed on April 12, 2012, well after February 24, 2012, the date Petitioner declined to file a Reply Brief before the ICA.

Thus, Petitioner could not have raised the *Nesmith* argument before the ICA.

6. HRPP Rule 7(d) states in relevant part that "[t]he charge shall be a plain, concise and definite statement of the essential facts constituting the offense charged."

conviction.'" (Quoting *Nesmith*, 127 Hawai'i at 56, 276 P.3d at 625.)

■ Respondent observes that Petitioner's "defense was that he was never aware that he was driving his vehicle more than sixty [mph]." According to Respondent, Petitioner's counsel stated the correct state of mind requirements during closing argument and noted that "this is not a negligence case." Respondent argues that, therefore, Petitioner "was clearly aware of precisely what he needed to defend against [to avoid] a conviction." Thus "his constitutional rights were not adversely affected." [7]

## C.

In *Nesmith*, this court cited with approval *Elliott*, in which the petitioner had challenged the sufficiency of the oral charge for the first time on appeal, arguing that the oral charge did not include a mens rea element. *Nesmith*, 127 Hawai'i at 56, 276 P.3d at 625 ("[*Elliott*] provides an illustration of how omission of facts in a charge can render a charge deficient.") *Nesmith* stated that, as a result, *Elliott* "liberally reviewed the oral charge in favor of its validity." *Id.* However, "[e]ven under a liberal review, [this court] held [in *Elliott*] that the charge could not be reasonably construed to state the offense of resisting arrest," because "the requisite state of mind was omitted." *Id.*

■ In this case, as in *Elliott*, Petitioner challenged the sufficiency of the oral charge for the first time on appeal, and therefore the charge must be construed liberally in favor of its validity. *Id.* As in *Elliott*, the instant charge omitted the requisite state of mind. Analogous to *Elliott*, then, the excessive speeding charge cannot be "reasonably construed to state an offense." *Id. Nesmith*

therefore mandates dismissal without prejudice. *Id.*

Respondent argues that *Nesmith* supports a contrary result, because *Nesmith* holds that a charge is only deficient if defendants lack the notice necessary to avoid a conviction. In *State v. Elliott*, however, this court noted that the defendant "has not indicated how she was surprised or prejudiced by the omissions, and the record does not show that she was hampered in her defense." 77 Hawai'i 309, 311, 884 P.2d 372, 374 (1994) (brackets omitted). Nevertheless, *Elliott* held that "with respect to the resisting arrest count, the requisite state of mind was omitted from the charge," and therefore "the oral charge at issue [was] fatally defective." *Id.* at 313, 884 P.2d at 376. Similarly, in this case, the charge omitted the requisite state of mind, and therefore it cannot be "reasonably construed to state [an] offense." *Id.*

■ Less than ten months ago this court, in a unanimous opinion,[8] held that the failure to allege a requisite state of mind results in dismissal without prejudice:

In *Nesmith*, this court reasoned that 'state of mind requirements, though not an element of an offense' were required to be included in the charges against the defendants in order 'to alert the defendants of precisely what they needed to defend against to avoid a conviction.' 127 Hawai'i at 56, 276 P.3d at 625 (internal quotation marks and citations omitted). *Nesmith* held that [if a] state of mind [is not] included in a charge[ ] the case [is] dismissed without prejudice. *Id.* at 54, 276 P.3d at 623. Because the charge here did not contain the requisite state of mind, as the State concedes, *Nesmith* mandates dismissal without prejudice.

7. Further, Respondent contended for the first time that HRS § 291C–105(a) involves an absolute liability offense, and hence the State was not required to allege a state of mind in the charge. Respondent's argument that HRS § 291C–105(a) is an absolute liability offense was not raised before the court, and is therefore waived. See *State v. Kikuta*, 125 Hawai'i 78, 89, 253 P.3d 639, 650 (2011) ("[T]he failure to properly raise an issue at the trial level precludes a party from raising that issue on appeal."). In any event, Respondent's arguments are virtually identical to

those raised by the State in *State v. Gonzalez*, 128 Hawai'i 314, 288 P.3d 788 (2012). In *Gonzalez*, the argument that excessive speeding is a strict liability crime was rejected. *Id.* at 324, 288 P.3d at 798. Accordingly, we do not discuss this contention further.

8. Respectfully, in light of this court's recent unanimous adherence to this proposition, the dissenting justices' position with respect to plain error need not be discussed.

*Gonzalez,* 128 Hawai'i at 324, 288 P.3d at 798.[9] Accordingly, we adhere to this core principle: A charge that fails to charge a requisite state of mind cannot be construed reasonably to state an offense and thus the charge is dismissed without prejudice because it violates due process.[10] *Elliott,* 77 Hawai'i at 313, 884 P.2d at 376; *see also Nesmith,* 127 Hawai'i at 56, 276 P.3d at 625 ("In *Elliott,* the petitioner challenged the sufficiency of this oral charge for the first time on appeal.... Even under a liberal review, we held that the charge could not be reasonably construed to state the offense of resisting arrest.").

### V.

■ Due to the likelihood of retrial, Petitioner's argument that Respondent failed to lay an adequate foundation for the introduction of the speed reading from the laser gun may be addressed in part to prevent future error. In order to lay an adequate foundation for the speed reading from a laser gun, the State must demonstrate (1) that the accuracy of the laser gun was tested according to procedures recommended by the manufacturer, *Assaye,* 121 Hawai'i at 213, 216 P.3d at 1236, and (2) that "the nature and extent of an officer's training in the operation of a laser gun [met] the requirements indicated by the manufacturer." *Id.* at 215, 216 P.3d at 1238. Petitioner argues that neither requirement was satisfied here. He also asserts that Respondent failed to introduce evidence that the laser gun was "inspect[ed]" or service[d] by the manufacturer," as required by *Manewa,* 115 Hawai'i at 354, 167 P.3d at 347.

### A.

Petitioner advances three arguments suggesting that, under the first prong of the *Assaye* test, Respondent did not establish that the laser gun was tested in accordance with the manufacturer's recommendations. First, Petitioner argues that the officer's knowledge of the four tests was based upon "reading the manual that was never offered or admitted into evidence." Thus, according to Petitioner, "his testimony was based upon hearsay[11]—the contents that he obtained from the manual were statements, other than statements made by him while testifying, offered to prove the truth of the matter asserted—that the manufacturer, LTI, recommended these four tests to ensure that the device was in proper working order."

Second, Petitioner argues that "[the officer] assumed the manual was published by LTI," but he was "trained by an HPD officer, he received the manual from the training officer, and the manual's cover was imprinted only with the words 'Operator's Manual' and possibly an HPD logo." Additionally, "[the officer] admitted that he did not know who provided the manual to HPD, whether the

9. The dissent contends that *Gonzalez* is distinguishable because in *Gonzalez,* the defendant objected to the oral charge before trial commenced. Dissenting opinion at 364 n. 2, 311 P.3d at 687 n. 2. However, based on *Nesmith, Gonzalez* stands for the principle that a charge that fails to include the requisite state of mind would be dismissed without prejudice, *Gonzalez,* 128 Hawai'i at 324, 288 P.3d at 798 ("*Nesmith* held that [if] state of mind [is not] included in a charge [ ] the case [is] dismissed without prejudice."), even if an objection is not raised at trial and the defendant was not prejudiced by the omission of state of mind. *Elliott,* 77 Hawai'i at 313, 884 P.2d at 376; *cf. Nesmith,* 127 Hawai'i at 55, 276 P.3d at 624 ("Like *Elliott,* in this case, the ... state of mind requirements ... needed to be charged[.]").

10. The dissent contends that dismissing the charge has the effect of "treating timely and untimely objections to a charge the same." Dissenting opinion at 368–69 n. 6, 311 P.3d at 691–92 n. 6. However, that a charge that does not include the requisite state of mind is dismissed without prejudice based on due process is now firmly established. *See Nesmith,* 127 Hawai'i at 56, 276 P.3d at 625; *see also Gonzalez,* 128 Hawai'i at 324, 288 P.3d at 798; *State v. Bortel,* No. SCAP–12–0000392, 129 Hawai'i 153, 2013 WL 691794, at *3 (Haw. Feb. 25, 2013) (mem.) ("According to *Gonzalez, Nesmith* held that the state of mind must be included in a charge or the case [is] dismissed without prejudice.") (internal quotation marks omitted); *State v. Castro,* No. SCWC–30703, 128 Hawai'i 115, 2012 WL 3089722, at *1 (July 30, 2012)(SDO). As this court concluded in *Nesmith,* "mens rea must be alleged in a[ ] charge." 127 Hawai'i at 56, 276 P.3d at 625.

11. Hawai'i Rules of Evidence (HRE) Rule 802 provides, in relevant part:

 **Rule 802. Hearsay**
 Hearsay is not admissible except as provided by these rules, or by other rules prescribed by the Hawai'i supreme court, or by statute.

manual was written or compiled by HPD, and that he never met anyone from LTI." Petitioner declares that thus, "[the officer's] testimony that the tests were recommended by the manufacturer should not have been admissible for lack of personal knowledge."

Third, Petitioner contends that the best evidence rule required Respondent to introduce the manual itself into evidence. According to Petitioner, HRE Rule 1002 [12] states that " 'to prove the content of a writing . . . the original writing . . . is required' " and here "the content of the manual was the very evidence the State relied upon to establish that LTI had recommended the four tests."

Regarding training under the second prong of the *Assaye* test, Petitioner argues that Respondent "failed to adduce *any* evidence as to whether the [officer's] training . . . met the requirements indicated by the manufacturer. In fact, [Respondent] did not present any evidence as to what LTI even requires in the training in the operation [sic] of the laser gun." (Emphasis in original.)

Finally, with respect to *Manewa*, Petitioner asserts that this court held that an inadequate foundation was laid when a chemist "lacked the personal knowledge that an [analytical balance] had been properly calibrated," and "merely assumed that the manufacturer's service representative had done so." Petitioner then cites the concurring opinion in *Assaye* as holding that "*Manewa* 'requires not only that the State show that there is an accepted manufacturer's procedure . . . but also to show that the instrument has been inspected and serviced as required by the manufacturer.' " (Quoting *Assaye*, 121 Hawai'i at 217, 216 P.3d at 1240 (Acoba, J., concurring).)

### B.

In its Response, Respondent argues that all of Petitioner's evidentiary arguments other than its personal knowledge objection are waived, because they were not raised before

the ICA. As to personal knowledge, Respondent relies on the arguments made before the ICA, where it maintained that the officer's testimony that the manual was provided by LTI was a "reasonable inference," and that other evidence linked LTI to the manual, such as the fact that the laser gun was manufactured by LTI and the title of the manual was the "LTI 20–20 Operator's Manual."

Further, Respondent contends that "[Petitioner's] exact argument [regarding the best evidence rule] was recently rejected in another case." (Citing *State v. Jervis*, No. 30463, 125 Hawai'i 30, 2011 WL 1713501 (App. May 5, 2011) (SDO).) In *Jervis*, the ICA reasoned that the best evidence rule did not apply because "[the officer's] testimony about the manual was not adduced to prove the contents of the manual, but rather to establish foundation for his testimony." *Jervis*, 2011 WL 1713501 at *1 (citing *Fireman's Fund Ins. Co. v. Stites*, 258 F.3d 1016, 1023 (9th Cir.2001); *Smith v. Atlantic Richfield Co.*, 814 F.2d 1481, 1486 (10th Cir.1987); *United States v. Carlock*, 806 F.2d 535, 551 (5th Cir.1986); *Lang v. Cullen*, 725 F.Supp.2d 925, 953–54 (C.D.Cal.2010)).

With respect to *Manewa*, Respondent argued that there, this court held that the State had established that a "[Gas chromatograph mass spectrometer]" was working properly because an expert "testified that he personally conducted a 'routine check' 'each and every morning' 'to ensure that all the parameters are within the manufacturer's specifications.' " (Quoting *Manewa*, 115 Hawai'i at 354, 167 P.3d at 347.) Respondent contended that, therefore, establishing that a "routine check" was performed is enough to establish that a device is working. Lastly, Respondent maintained that in the instant case "it was never established at trial whether there was in fact a manufacturer's service representative who periodically calibrated the laser gun," and in the absence of such evidence "the State is not required to show that the laser gun 'had been properly cali-

---

**12.** HRE Rule 1002 provides as follows:

> **Rule 1002. Requirements of Original**
>
> To prove the content of a writing, recording, or photograph, <u>the original writing, recording,</u> <u>or photograph is required</u>, except as otherwise provided in these rules or by statute.
>
> (Emphasis added.)

brated by the manufacturer's servicing representative.'" (Quoting *Manewa*, 115 Hawai'i at 354, 167 P.3d at 347.)

## VI.

### A.

 Petitioner argues that "[a]bsent [the officer's] assumption that LTI might have provided the manual ... there is nothing in evidence to support that [the tests used to verify the gun's accuracy] were recommended by LTI." We conclude that in this respect, admission of the officer's testimony as evidence was wrong. *See Kealoha v. County of Hawai'i*, 74 Haw. 308, 319–20, 844 P.2d 670, 676 (1993) ("When application of a particular evidentiary rule can yield only one correct result, the proper standard for appellate review is the right/wrong standard.").[13]

HRE Rule 602 provides that "[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." The Commentary to HRE Rule 602 explains that, " 'Personal knowledge,' for purposes of this rule, means that the witness perceived the event about which he testifies." In other words, witnesses may not testify based on "guesswork" or "speculation," such as when the witness concludes that a fact "must have" been true. *See* Addison M. Bowman, *Hawai'i Rules of Evidence Manual* § 602–1[5] (2012) (hereinafter Bowman, *HRE Manual* ).

Here, the officer's testimony that the manual was provided by LTI was based on "guesswork" and "speculation." As he acknowledged, the officer did not "know personally whether anybody from LTI provided [the] manual[ ]," but "assumed that somebody from LTI must have provided it." The only individuals present during the officer's training were HPD officers. The manual was provided by "the traffic division instructors that were training [the officer]." Thus, "nobody from LTI gave [him] the manual." The officer recounted that he had "[n]ever met a representative from [LTI]." Finally, the officer confirmed that he "[didn't] know personally whether anybody from LTI provided these manuals to [HPD]." In other words, the officer had no personal knowledge that the manual was provided by LTI, or was an LTI manual.

Additionally, the officer's testimony regarding the manual's appearance did not connect the manual to LTI. "[T]he only thing that [he could] recall about the manual" was that it said "Operator's Manual" on its cover and that it "may have a[n] HPD logo." Although the officer did state that the manual's cover read "LTI 20–20 Operator's Manual," this indicated only that the manual concerned the laser gun designated "LTI 20–20," and not that LTI produced the manual. In sum, the officer provided no testimony as to the manual itself that would suggest that it was from LTI.

Finally, the officer conceded that he did not have personal knowledge regarding who wrote or compiled the manual. The officer did not know "if the manual ... that may or may not be stamped with the [HPD] logo was

---

**13.** This court has not addressed whether the court's finding that a witness has personal knowledge pursuant to HRE Rule 602 is reviewed under the right/wrong standard or the abuse of discretion standard. The right/wrong standard applies to questions where "there could only be one correct answer" such as "whether the evidence had simply failed to fulfill the applicable requirements for admission." *Kealoha*, 74 Haw. at 319, 844 P.2d at 676; *see also State v. Moore* 82 Hawai'i 202, 217, 921 P.2d 122, 137 (1996) (holding that, regarding hearsay exceptions, "the appropriate standard for appellate review is the right/wrong standard," because "with respect to the exceptions, the only question for the trial court is whether the specific requirements of the rule were met"). However, the abuse of discretion standard applies to questions that require the court to make a "judgment call" such as those that require balancing on the part of the trial court. *Kealoha*, 74 Haw. at 315, 844 P.2d at 674 (holding that HRE Rule 403 questions are subject to the abuse of discretion standard because they require a "delicate balance between probative value and prejudicial effect").

As with the hearsay exceptions, the only question for the court under Rule 602 is whether or not a witness has personal knowledge of the matter he or she testifies to, i.e., "whether or not the specific requirements of the rule were met." *Moore*, 82 Hawai'i at 217, 921 P.2d at 137. Hence, where the court's ruling regarding the witness' personal knowledge is concerned, "the appropriate standard for appellate review is the right/wrong standard." *Id.*

[sic] written or compiled by the [HPD]." He did not "know the person who wrote the manual." The officer had no verifiable basis for concluding that the manual was provided by LTI.[14]

Thus, nothing in evidence was "sufficient to support a finding" that the officer had personal knowledge of the fact as testified to on direct, *see* HRE Rule 602, that the manual was "provided by [LTI], the manufacturer of [the] LTI 20–20." Respondent itself noted that the officer's statement on direct examination was based on the inference that the manual "must have" been provided by LTI. Rule 602 prohibits precisely such an inference. That inference, without any basis in fact, must be categorized as guesswork. *See* Bowman, *HRE Manual* at § 602–1[5] (noting that the personal knowledge rule is violated when a witness concludes that a fact "musta," i.e., "must have," been true). Because the officer lacked personal knowledge that the manual was "provided by" LTI, there was no evidence establishing that the four tests performed by the officer were recommended by the manufacturer. Therefore, the court erred in concluding that the four tests were recommended by the manufacturer.

### B.

■ Respondent apparently maintains that even without the officer's testimony, the evidence supported the conclusion that the manual was provided by LTI, essentially because the laser gun was manufactured by LTI and the cover of the manual read "LTI 20–20 Operator's Manual." Contrary to the court's finding, there was no evidence connecting LTI to the manual itself. As discussed *supra*, the fact that "LTI" was in the manual's title indicated only that the manual concerned the laser designated "LTI 20–20," and not that LTI produced the manual. Evidence regarding the manual—the officer's testimony that the HPD logo was on the cover and that the manual was provided to him by an HPD officer—implied that the manual was compiled, not by LTI, but by the

HPD. Hence, the court erred by concluding that the manual was provided by LTI.

### C.

■ Respondent's failure to link the manual to the laser gun's manufacturer resolves Petitioner's contention that Respondent failed to satisfy the first prong of *Assaye*. Petitioner's arguments regarding the hearsay rule and best evidence rule were not raised in Petitioner's Opening Brief before the ICA, and are therefore waived. Hawai'i Rules of Appellate Procedure Rule 28(b)(7) ("Points not argued may be deemed waived.").

### VII.

### A.

■ Petitioner also asserts that Respondent failed to satisfy the second prong of *Assaye*, which requires the State to prove that an officer's training in the operation of a laser conformed to the manufacturer's requirements. 121 Hawai'i at 215, 216 P.3d at 1238. To recount, Respondent argues as it did before the ICA that *Assaye* does not require the State to set forth the manufacturer's requirements for officer training, but instead "implicitly teaches that it is difficult to discern how anyone can use the laser gun properly <u>without</u> any training or instruction." (Emphasis in original.) The officer's testimony that he received eight hours of training, according to Respondent, met that requirement. To the contrary, *Assaye* held that the State must establish that an officer's training satisfied the laser manufacturer's requirements. 121 Hawai'i at 215, 216 P.3d at 1238.

■ Logically, this requires a showing as to both (1) the training requirements set forth by the manufacturer, and (2) the training actually received by the operator of the laser gun. We have said before that this showing cannot be met simply by describing the officer's training. *See id.* at 215–16, 216 P.3d at 1238–39 (holding that although an

---

**14.** As noted before, none of the manuals produced in discovery were admitted into evidence or linked to the officer's testimony. Although

Respondent allowed Petitioner to review three separate manuals in discovery, as noted, the record is silent as to the contents of the manuals.

officer testified that he was "certified" after taking a "four hour class," the State "ha[d] not shown whether the training that [the officer] received [met] the requirements of the manufacturer of the laser gun") (internal quotations omitted). Consequently, Respondent could not demonstrate that the officer's training met the manufacturer's requirements because the only evidence of those requirements was the manual, and there was no evidence linking the manual to LTI.

### B.

Respondent also asserts that because in closing argument Petitioner "conceded that [the officer] testified on direct [examination] that he was trained in accordance with the manufacturer's specification," and that "the specification was derived from the manual itself," Petitioner cannot now argue that [the officer's] training was insufficient.[15] But read in its entirety, Petitioner's closing argument demonstrates that Respondent's contention is incorrect. Petitioner argued that on cross-examination, the officer admitted that although he "testified on direct examination that he was trained in accordance with the manual that LTI provided," that "was just based on [his] assumption that somebody from LTI must have provided it." Thus, Petitioner's "concession" did not preclude the argument that the officer had only speculat-

ed as to who provided the manual upon which his training was based.[16]

### VIII.

According to Petitioner, the concurring opinion in *Assaye* correctly interprets *Manewa,* and under the concurrence, Respondent must also demonstrate that the laser gun was serviced by a representative of the manufacturer to lay an adequate foundation for the speed reading taken from the laser gun. In this case, there is no clear evidence in the record with respect to the periodic servicing of the laser guns. Petitioner asked the officer whether the laser gun was under warranty and required periodic software updates, but he replied that he was "unaware" of any such requirement. Thus, Petitioner's question regarding *Manewa* need not be resolved here.

### IX.

Based on the foregoing, the August 22, 2012 judgment of the ICA, which affirmed the court's August 23, 2011 Notice of Entry of Judgment and/or Order and Plea/Judgment and the court's aforesaid judgment are vacated and the case remanded to the court with instructions to dismiss the case without prejudice.

---

**15.** In closing argument, Petitioner argued that

> [d]efense will concede that the officer testified on direct that he was trained in accordance with the manufacturer's specification. Defense did ask to voir dire at that point, however, also acknowledge[d] that it could be done on cross-examination subject to re-objection. And I believe on cross-examination, defense was able to successfully elicit that while the officer stated the words he was trained on the manufacturer's specification in accordance [sic], he had no personal knowledge as to whether or not he actually was.

(Emphases added.)

**16.** The record here does not reveal any prosecution in which the State has established that the four tests referred to and the training requirements are set forth in a manual that has been verified by the manufacturer and provided to the State by the manufacturer. *See, e.g., State v. Eid,* 126 Hawai'i 430, 444–45, 272 P.3d 1197, 1211–12 (2012) (noting that in a "test case" there was

"extensive evidence, including lengthy testimony from master certified automobile technicians ... that the procedures and equipment used to conduct the [speed checks]" gave "adequate assurances that the ... speed checks were reliable"); see *also Assaye,* 121 Hawai'i at 213–15, 216 P.3d at 1236–38 (requiring that accuracy of a laser gun must be "adduced through evidence that the procedures are recommended by the manufacturer," that "an officer's training in the operation of a laser gun meets the requirements indicated by the manufacturer."); *In re Admissibility of Motor Vehicle Speed Readings Produced by the LTI Marksman 20–20 Laser Speed Detection Sys.,* 314 N.J.Super. 233, 714 A.2d 381, 391–92 (1998)) ("the admissibility of speed readings produced by the LTI Marksman 20–20 Laser Speed Detection System shall be subject to certain rules, which includes the requirement that pre-operational checking procedures recommended by the manufacturer of the laser speed detector shall be shown to have been made in each case") (brackets and internal quotation marks omitted)).

Concurring and Dissenting Opinion by RECKTENWALD, C.J., in Which NAKAYAMA, J., joins.

Defendant Ricardo Apollonio was charged with excessive speeding. Although the oral charge did not allege Apollonio's state of mind at the time of the incident, his trial counsel correctly recognized that the State was required to prove that Apollonio was, at the least, reckless, and argued at trial that the State had failed to carry that burden. Apollonio was convicted and appealed to the Intermediate Court of Appeals (ICA), which affirmed his conviction. At no time in the trial court or in the ICA did Apollonio challenge the sufficiency of the charge. It was not until the case reached this court that, for the first time, he contended that the charge was inadequate. He does not suggest how he was prejudiced by the lack of an allegation about his state of mind. He does not, for example, argue that he would have offered different evidence had the charge alleged the requisite state of mind. Nevertheless, Apollonio contends that his conviction should be set aside.

The majority holds that these circumstances warrant vacating the conviction in the instant case. Majority opinion at 354–55, 311 P.3d at 677–78. I respectfully dissent.[1] In my view, when a defendant objects to the sufficiency of a charge for the first time on

appeal, an appellate court's review of such a claim is limited to plain error. In other words, in order to obtain post-conviction relief, the defendant is required to show that he or she was prejudiced by the error.[2] Here, the record clearly shows that Apollonio was aware of the requisite state of mind and thus suffered no prejudice from the lack of a mens rea allegation.

## I. Background

Apollonio was orally charged with Excessive Speeding as follows:

On or about July 1st, 2010, in the City and County of Honolulu, State of Hawai'i, you did drive a motor vehicle at a speed exceeding the applicable state or county speed limit by 30 miles per hour or more by driving 76 miles per hour in a 35–mile-per–hour zone, thereby violating Section 291C–105, subsection (a)(1)(C)(ii) of the Hawai'i Revised Statutes, as you have had one prior conviction within a five-year period.

Apollonio did not object to the sufficiency of the oral charge before the district court.

A bench trial was conducted and, during closing arguments, defense counsel argued that the State failed to prove the requisite state of mind:

---

1. I concur in the majority's conclusion that the State failed to lay adequate foundation to admit the speed reading from the laser gun because the State did not establish that the accuracy of the laser gun was tested according to procedures recommended by the manufacturer or that the officer's training in operating the laser gun met the manufacturer's standards. Majority opinion at 360–62, 311 P.3d at 683–85. Accordingly, because without the speed reading there was insufficient evidence to support Apollonio's conviction, I would therefore vacate his conviction on this ground and remand for trial.

2. The majority concludes that *State v. Gonzalez,* 128 Hawai'i 314, 324, 288 P.3d 788, 798 (2012), is dispositive of this question and requires a contrary result. Majority opinion at 358–59, 359 n. 9, 359 n. 10, 311 P.3d at 681–82, 682 n. 9, 682 n. 10. Respectfully, *Gonzalez* is readily distinguishable from the instant case. In *Gonzalez,* the defendant objected to the charge's omission of the requisite state of mind before trial commenced. 128 Hawai'i at 315–16, 288 P.3d at 789–90. Indeed, this court specifically noted

that the defendant objected before the trial court. *See id.* at 324, 288 P.3d at 798 ("In this case, as in [*State v. Nesmith,* 127 Hawai'i 48, 51, 276 P.3d 617, 620 (2012)], the defendant objected to the failure to allege the requisite state of mind at trial." (emphasis added)). In contrast, the defendant in the instant case failed to object to the lack of mens rea in the charge before the trial court and on direct appeal, and only objected in his application for certiorari.

*State v. Castro,* No. SCWC–30703, 128 Hawai'i 115, 2012 WL 3089722 (Haw. July 30, 2012) (SDO), and *State v. Bortel,* No. SCAP–12–0000392, 129 Hawai'i 153, 2013 WL 691794 (Haw. Feb.25, 2013), upon which the majority also relies, are distinguishable for the same reason. The record in *Castro* shows that the defendant specifically objected to the lack of a mens rea allegation in the complaint before trial began. Similarly, the defendant in *Bortel* objected to the lack of a mens rea allegation at trial. 2013 WL 691794, at *2 n. 7 ("In this case, as in *Gonzalez* and *Nesmith,* the defendant objected to the failure to allege the requisite state of mind at trial.").

[T]he second argument the defense would like to make is that the State has failed to prove beyond a reasonable doubt that—with regard to the—[ ] Apollonio's state of mind. Even in this case, it is reckless. Reckless as defined under the HRS is a conscious disregard for a substantial and unjustifiable risk. The defense is not contending that—[ ] Apollonio testified credibly that he looked at his speedometer, his speedometer said 60 miles per hour. This is not a negligence case. This is not anything—again, he had to have made a conscious disregard for a substantial and unjustifiable risk. The prosecutor asked him is there any—you know, do you assume it was working properly on that day? He answered candidly, yeah, I just assume it. And that is not—again, rise to the level of needed—of proving the state of mind beyond a reasonable doubt even when the state of mind is reckless. This is still a criminal proceeding. This is not a civil proceeding.

And so based on that, we ask that the court find [ ] Apollonio not guilty in these cases.

The district court found Apollonio guilty as charged. With regard to the requisite state of mind, the district court stated that "the court can infer from the circumstances that traveling at that speed, at the minimum, is reckless. So therefore, the court finds that [the] State has proved its case beyond a reasonable doubt."

Apollonio timely appealed, contending that the district court erred in admitting evidence of the laser gun reading. Apollonio did not challenge the sufficiency of the charge before the ICA. The ICA affirmed. *State v. Apollonio,* No. CAAP–11–0000695, 128 Hawai'i 129, 2012 WL 2894715, at *3 (Haw.App. July 16, 2012).

In his application for writ of certiorari, Apollonio challenges for the first time the sufficiency of the charge. Specifically, Apollonio argues that the ICA's SDO constituted "an obvious inconsistency" with this court's decision in *Nesmith,* 127 Hawai'i 48, 276 P.3d 617, which was decided while Apollonio's case was pending on appeal. Apollonio also argues that the oral charge was fatally defec-

tive under Hawai'i Rules of Penal Procedure (HRPP) Rule 7(d) because "state of mind [was] an 'essential fact' that must be alleged in a charging document[.]" Finally, Apollonio contends that the district court lacked jurisdiction over his case because the charge omitted the mens rea allegation. However, Apollonio does not argue that he did not understand the charge against him.

The State responds that Apollonio "was clearly aware of precisely what he needed to defend against to avoid a conviction" and therefore "his constitutional rights were not adversely affected." The State notes that Apollonio's "defense was that he was never aware that he was driving his vehicle more than sixty miles per hour" and that defense counsel stated the requisite state of mind during closing argument.

## II. Discussion

Apollonio did not argue in the district court or before the ICA that the charge was insufficient. If a defendant challenges the sufficiency of a charge for the first time on appeal, the charge shall be liberally construed in favor of its validity. *See State v. Motta,* 66 Haw. 89, 90, 657 P.2d 1019, 1019–20 (1983); *State v. Wells,* 78 Hawai'i 373, 381, 894 P.2d 70, 78 (1995); *State v. Merino,* 81 Hawai'i 198, 212, 915 P.2d 672, 686 (1996).

### A. The sufficiency of a charge is not jurisdictional

Apollonio argues, inter alia, that the lack of a mens rea allegation in the charge deprived the district court of jurisdiction over his case. Apollonio's contention lacks merit.

The term "jurisdiction" means a court's "statutory or constitutional power to adjudicate" a type of case. *United States v. Cotton,* 535 U.S. 625, 630, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002) (emphasis omitted); *see Black's Law Dictionary* 927 (9th ed. 2009) (defining "jurisdiction" as, inter alia, "[a] court's power to decide a case or issue or decree"). Article VI, section 1 of the Hawai'i Constitution provides, in relevant part, that Hawai'i courts "shall have original and appellate jurisdiction as provided by law[.]" Accordingly, the Hawai'i legislature sets the

jurisdiction of the courts, and has done so by statute. The applicable statute here provides that

> [d]istrict courts shall have jurisdiction of, and their criminal jurisdiction is limited to, criminal offenses punishable by fine, or by imprisonment not exceeding one year whether with or without fine. They shall not have jurisdiction over any offense for which the accused cannot be held to answer unless on a presentment or indictment of a grand jury.

HRS § 604–8(a) (Supp.2011).[3]

The legislature also established territorial limitations on criminal jurisdiction, providing in relevant part that "a person may be convicted under the law of this State of an offense committed by the person's own conduct or the conduct of another for which the person is legally accountable if ... the conduct or the result which is an element of the offense occurs within this State[.]" HRS § 701–106(1)(a) (1993).

Outside of these parameters, a charging defect is not jurisdictional. Indeed, there is no language, in the constitution or Hawai'i statutes, that bases a trial court's jurisdiction over criminal cases on the sufficiency of a charging instrument.[4] Nevertheless, in *State v. Cummings*, 101 Hawai'i 139, 142–43, 63 P.3d 1109, 1112–13 (2003), this court stated that the failure of a charging instrument to state an offense is a jurisdictional defect that cannot be waived. In that case, this court held that a complaint "failed to state a material element of [driving under the influence] that the prosecution was required to prove," and that it thus failed to state an offense. *Id.* at 145, 63 P.3d at 1115. Accordingly, this court stated, the district court lacked subject matter jurisdiction to preside over the case. *Id.* The *Cummings* court stated that "an oral charge, complaint, or indictment that does not state an offense contains within it a substantive jurisdictional defect, rather than simply a defect in form, which renders any subsequent trial, judgment of conviction, or sentence a nullity." *Id.* at 142, 63 P.3d at 1112. According to the *Cummings* court, such a defect is not "waivable, nor simply one of notice, which may be deemed harmless if a defendant was actually aware of the nature of the accusation against him or her, but, rather, is one of substantive subject matter jurisdiction, which may not be waived or dispensed with, and that is per se prejudicial." *Id.* at 143, 63 P.3d at 1113 (citations and quotation marks omitted).

However, a close examination of the authorities *Cummings* relied on calls into question its holding that an insufficient charge constitutes a jurisdictional defect. *Cummings* relied largely on this court's opinion in *State v. Jendrusch,* 58 Haw. 279, 281, 567

---

3. The legislature also conferred jurisdiction over certain criminal cases to Hawai'i circuit courts, *see* HRS § 603–21.5 (Supp.2011), and family courts, *see* HRS § 571–14 (Supp.2011). For example, HRS § 603–21.5 provides, in relevant part:

 (a) The several circuit courts shall have jurisdiction, except as otherwise expressly provided by statute, of:

 (1) Criminal offenses cognizable under the laws of the State, committed within their respective circuits or transferred to them for trial by change of venue from some other circuit court[.]

4. HRS § 806–34 (1993) does not support the proposition that an insufficient charge is a jurisdictional defect. HRS § 806–34 provides, in relevant part, with regard to indictments:

 In an indictment the offense may be charged either by name or by reference to the statute defining or making it punishable; and the transaction may be stated with so much detail of time, place, and circumstances and such particulars as to the person (if any) against

whom, and the thing (if any) in respect to which the offense was committed, as are necessary to identify the transaction, to bring it within the statutory definition of the offense charged, <u>to show that the court has jurisdiction,</u> and to give the accused reasonable notice of the facts.

(Emphasis added).

The clause, "to show that the court has jurisdiction," does not mean that the jurisdiction of the trial court depends on the sufficiency of the charge. Rather, the charge must show that the court has jurisdiction by alleging that the offense occurred within the court's territorial jurisdiction and that the crime is within the penal code. *See, e.g.,* HRS 701–106(a)(1). Accordingly, this requirement of jurisdiction is distinct from the sufficiency of the charge.

In the instant case, the charge alleged that Apollonio violated HRS § 291C–105 by committing acts within the City and County of Honolulu, State of Hawai'i, and therefore adequately alleged jurisdiction.

P.2d 1242, 1244 (1977), for the proposition that "the omission of an essential element of the crime charged is a defect in substance rather than of form." *Cummings*, 101 Hawai'i at 142, 63 P.3d at 1112. However, *Jendrusch* did not expressly state that an insufficient charge is a jurisdictional defect. Rather, *Jendrusch* stated that a charge lacking an essential element of the crime charged "amounts to a failure to state an offense," and characterized a conviction based upon such a defective charge as a "denial of due process." 58 Haw. at 281, 567 P.2d at 1244. *Jendrusch* also stated that the "[l]ack of jurisdiction or the failure of the indictment or information to charge an offense shall be noticed by the court at any time during the pendency of the proceeding." *Id.* (emphasis added) (quoting Hawai'i Rules of Criminal Procedure Rule 12 (1960)). Thus, to the extent that *Jendrusch* stated that the charge failed to state an offense, this court appeared to recognize the insufficiency of the charge as distinct from a jurisdictional defect. Moreover, in setting forth the proposition that such a defect warrants reversal even when challenged for the first time on appeal, the *Jendrusch* court cited federal precedent that is no longer followed since the United States Supreme Court's 2002 ruling in *Cotton*, 535 U.S. 625, 122 S.Ct. 1781, discussed infra. *See Jendrusch*, 58 Haw. at 281, 567 P.2d at 1244.

*Cummings* also cited *Territory v. Gora*, 37 Haw. 1, 6 (Terr.1944), which stated that a charge's failure to state an offense was a "jurisdictional point[.]" *Cummings*, 101 Hawai'i at 142, 63 P.3d at 1112. However, the *Gora* court found that the defendant abandoned that point by not arguing it on appeal, and that he waived his challenge that the charge was insufficient because he did not object to the charges in the trial court. 37 Haw. at 6. Finding that such a challenge is waivable is inconsistent with the principle that an insufficient charge is a jurisdictional defect.

The *Cummings* court also relied on Chief Justice Peters' concurring opinion in *Territory v. Goto*, 27 Haw. 65, 103 (1923), which stated, inter alia, that an indictment "is essential to the court's jurisdiction." *Cum-*

*mings*, 101 Hawai'i at 142, 63 P.3d at 1112. The concurrence in part cites *Ex parte Bain*, 121 U.S. 1, 7 S.Ct. 781, 30 L.Ed. 849 (1887), which the United States Supreme Court expressly overruled in *Cotton*. *See Cotton*, 535 U.S. at 631, 122 S.Ct. 1781. Moreover, the majority in *Goto* held that the alleged defectiveness of the indictment in the case "is one which may be constitutionally waived." *Goto*, 27 Haw. at 74. Accordingly, on close examination, *Cummings'* assertion that an insufficient charge divests a trial court of jurisdiction is, respectfully, incorrect.

Moreover, this court's treatment of insufficient charge claims reflect principles contrary to the proposition that such an error constitutes a jurisdictional defect. For example, this court liberally construes and applies a presumption of validity to an allegedly deficient charge when the charge is challenged subsequent to a conviction. *See, e.g., State v. Hitchcock*, 123 Hawai'i 369, 378, 235 P.3d 365, 374 (2010); *State v. Sprattling*, 99 Hawai'i 312, 318, 55 P.3d 276, 282 (2002). This court has also held that, in determining the sufficiency of a charge, the court should examine all of the information provided to the defendant up to the time that he or she challenges the charge's sufficiency. *See, e.g., State v. Treat*, 67 Haw. 119, 120, 680 P.2d 250, 251 (1984) ("We think that in determining whether the accused's right to be informed of the nature and cause of the accusation against him has been violated, we must look to all of the information supplied to him by the State to the point where the court passes upon the contention that his right has been violated." (quoting *State v. Robins*, 66 Haw. 312, 317, 660 P.2d 39, 42–43 (1983))); *Sprattling*, 99 Hawai'i at 319, 55 P.3d at 283 ("[I]n construing the validity of an oral charge, we are not restricted to an examination solely of the charge, but will interpret it in light of all of the information provided to the accused." (citing, inter alia, *State v. Israel*, 78 Hawai'i 66, 70, 890 P.2d 303, 307 (1995))). Such further inquiry as described in the foregoing cases contradicts the proposition that an insufficient charge constitutes a jurisdictional flaw, as a jurisdictional defect would ordinarily mandate the automatic vacating of a conviction.

Indeed, many courts have abandoned the view that an insufficient charge constitutes a jurisdictional defect. The United States Supreme Court expressly rejected the contention that defects in a charging instrument may "deprive a court of its power to adjudicate a case." *Cotton*, 535 U.S. at 630, 122 S.Ct. 1781. At issue in *Cotton* was whether the omission from an indictment of a fact that enhanced the statutory maximum sentence warranted vacating the enhanced sentence, even though the defendant failed to object to the omission in the trial court. *Id.* at 627, 122 S.Ct. 1781. The Fourth Circuit Court of Appeals held that vacating the enhanced sentence was justified on the ground that "because an indictment setting forth all the essential elements of an offense is both mandatory and jurisdictional, a court is without jurisdiction to impose a sentence for an offense not charged in the indictment." *Id.* at 629, 122 S.Ct. 1781 (citation, ellipses, and emphasis omitted). The Supreme Court reversed. *Id.*

The Supreme Court expressly overruled its 1887 decision in *Ex parte Bain*, "the progenitor" of the view that a defective indictment deprives a court of jurisdiction. *Id.* at 629–31, 122 S.Ct. 1781. The Supreme Court explained that *Bain* "is a product of an era in which this Court's authority to review criminal convictions was greatly circumscribed." *Id.* at 629, 122 S.Ct. 1781. When *Bain* was decided, "a defendant could not obtain direct review of his criminal conviction in the Supreme Court[,]" and the "Court's authority to issue a writ of habeas corpus was limited to cases in which the convicting

court had no jurisdiction to render the judgment which it gave." *Id.* at 629–30, 122 S.Ct. 1781 (citations and quotation marks omitted). Accordingly, the Supreme Court's "desire to correct obvious constitutional violations led to a somewhat expansive notion of 'jurisdiction,' which was more a fiction than anything else[.]" *Id.* at 630, 122 S.Ct. 1781 (citations and some quotation marks omitted). The Supreme Court concluded that "*Bain*'s elastic concept of jurisdiction is not what the term 'jurisdiction' means today, i.e., the courts' statutory or constitutional <u>power</u> to adjudicate the case." *Id.* (citation and some quotation marks omitted) (emphasis in original). Having overruled *Bain* and "[f]reed from the view that indictment omissions deprive a court of jurisdiction," the Supreme Court proceeded to examine the defendants' claim under plain error review.[5] *Id.* at 631, 122 S.Ct. 1781.

Based on the foregoing, subject matter jurisdiction of the court and the sufficiency of the charge are two distinct concepts. Accordingly, an insufficient charge does not constitute a jurisdictional defect.

## B. An untimely objection to the sufficiency of a charge should be reviewed only for plain error

Because a defect in a charging instrument does not divest a trial court of jurisdiction, a defendant who challenges the sufficiency of a charge is therefore subject to the same limitations as one who raises any nonjurisdictional error.[6] Therefore, where a defendant

---

**5.** Many state courts agree that defects in an indictment do not deprive a court of jurisdiction. See, e.g., *Ex parte Seymour*, 946 So.2d 536, 538–39 (Ala.2006); *State v. Gentry*, 363 S.C. 93, 610 S.E.2d 494, 499–500 (2005); *State v. Ortiz*, 162 N.H. 585, 34 A.3d 599, 603–04 (2011); *Parker v. State*, 917 P.2d 980, 985 (Okla.Crim.App.1996) ("[A]ny failure to allege facts constituting the offense raises due process questions but does not affect the trial court's jurisdiction."); *State v. Barton*, 108 Ohio St.3d 402, 413–14, 844 N.E.2d 307, 318 (2006) ("[F]ailure to timely object to the allegedly defective indictment constitutes a waiver of the issues involved."); *State v. Maldonado*, 223 Ariz. 309, 223 P.3d 653, 655 (2010) (en banc) (rejecting the suggestion that a defective information in itself deprives a court of subject matter jurisdiction); *State v. Daniel*, 222 Or.App. 362, 193 P.3d 1021, 1024–25 (2008) (overruling

prior cases and holding that a defect in an indictment is not a jurisdictional error); 5 Wayne R. LaFave, Jerold H. Israel, Nancy J. King & Orin S. Kerr, Criminal Procedure § 19.2(e) (3d ed. 2007) (recognizing that while "almost all jurisdictions continue to treat a pleading alleging the essential elements as a prerequisite for judgment of conviction[,]" most state courts have "flatly rejected earlier rulings characterizing the failure to allege all material elements as a jurisdictional defect").

**6.** The majority opinion does not expressly address whether the lack of a mens rea allegation in a charge constitutes a jurisdictional defect. However, by essentially treating timely and untimely objections to a charge the same, the majority opinion effectively treats Apollonio's late

does not object to the sufficiency of the charge before the trial court, such a challenge is not preserved on appeal. Rather, a challenge to a charge for the first time on appeal should be reviewed for plain error; that is, an appellate court may recognize the error when it "affects substantial rights of the defendant." *State v. Staley*, 91 Hawai'i 275, 282, 982 P.2d 904, 911 (1999) (citation omitted). Accordingly, the defendant would be required to demonstrate that he or she was prejudiced by the allegedly defective charge. *Cf. State v. Klinge*, 92 Hawai'i 577, 592–93, 994 P.2d 509, 524–25 (2000). In determining whether the defendant's "right to be informed of the nature and cause of the accusation against him [or her] has been violated, we must look to all of the information supplied to him [or her] by the State to the point where the court passes upon the contention that the right has been violated." *Hitchcock*, 123 Hawai'i at 375, 235 P.3d at 379 (citations and emphasis omitted).

This approach is consistent with and recognizes the underlying purpose of a charge, which is to "apprise the accused of the charges against him [or her], so that [the accused] may adequately prepare his [or her] defense, and to describe the crime charged with sufficient specificity to enable [the accused] to protect against future jeopardy for the same offense." *State v. Vanstory*, 91 Hawai'i 33, 44, 979 P.2d 1059, 1070 (1999) (internal quotation marks and citation omitted), *superceded on other grounds by* HRS § 134-6(c) (Supp.2002). "[T]he sufficiency of the charging instrument is measured, inter alia, by 'whether it contains the elements of the offense intended to be charged, and sufficiently apprises the defendant of what he [or she] must be prepared to meet[.]' " *State v. Wheeler*, 121 Hawai'i 383, 391, 219 P.3d 1170, 1178 (2009) (quoting *Wells*, 78 Hawai'i at 379–80, 894 P.2d at 76–77) (some brackets in original and some added). In other words, the charge "must be worded in a manner such 'that the nature and cause of the accusation [could] be understood by a person of common understanding[.]' " *Sprattling*, 99 Hawai'i at 318, 55 P.3d at 282 (quoting *Israel*, 78 Hawai'i at 70, 890 P.2d at 307) (brackets

in original). This mandate is established in article I, section 14 of the Hawai'i Constitution, which requires that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation[.]"

The foregoing approach would revise our current *Motta/Wells* post-conviction liberal construction standard, which mandates that a conviction based upon a defective charge will not be reversed "unless the defendant can show prejudice <u>or</u> that the indictment [or complaint] cannot within reason be construed to charge a crime." *Merino*, 81 Hawai'i at 212, 915 P.2d at 686 (citation omitted) (emphasis added). Under the approach set forth here, this court should not reverse a conviction unless the defendant can show prejudice <u>and</u> that the charge cannot within reason be construed to charge a crime.

Such a revision of the liberal construction standard is appropriate given the jurisprudence that evolved since this court's adoption of the standard thirty years ago in *Motta*. The *Motta* court, in adopting the liberal construction standard, stated that it chose to adopt the rule "followed in most federal courts" and specifically cited cases in the first, second, sixth, ninth, and tenth circuit courts of appeals. 66 Haw. at 90–91, 657 P.2d at 1019–20. However, particularly following the United States Supreme Court's ruling in *Cotton*, all of the above federal circuits review belated challenges to the sufficiency of indictments—that is, challenges raised for the first time on appeal—only for plain error. *See United States v. Troy*, 618 F.3d 27, 34 (1st Cir.2010) (stating that the defendant's failure to challenge the sufficiency of the indictment "survives the government's waiver argument" but nonetheless "constitutes a forfeiture, which confines appellate review to plain error"); *United States v. Nkansah*, 699 F.3d 743, 752 (2d Cir.2012) (stating that the omission of a requisite element in the indictment is reviewed for plain error when the challenge is raised after trial, and finding that even if the omission "constitutes error that is plain, it did not impact appellant's substantial rights"); *United States v. Teh*, 535 F.3d 511, 515–17 (6th

objection the same as a jurisdictional challenge that cannot be waived or forfeited.

Cir.2008) (reviewing claim that indictment failed to state an offense, not raised at trial, for plain error, and finding that although the indictment failed to charge an offense, the defendant was "unable to show the prejudice required to disturb his conviction"); *United States v. Leos–Maldonado*, 302 F.3d 1061, 1064 (9th Cir.2002) (limiting review of an untimely objection to the sufficiency of the indictment to the plain error test and stating that "the error must be not only plain but also prejudicial"); *United States v. Sinks*, 473 F.3d 1315, 1320–22 (10th Cir.2007) (upholding conviction, finding that because an element of an offense "was proven by overwhelming and essentially uncontroverted evidence, the failure to charge it does not rise to the level of plain error").

At least some state courts have also followed the United States Supreme Court's lead in Cotton and confined their review of late challenges to the sufficiency of the charge to plain error. See, e.g., *Maldonado*, 223 P.3d at 657 ("If a defendant does not object before trial, as occurred here, the state's failure to timely file an information will be reviewed on appeal only for fundamental error. To prevail under this standard, [the defendant] must establish that an error occurred, was fundamental in nature, and caused him prejudice."); *Peay v. United States*, 924 A.2d 1023, 1029 (D.C.2007) ("[W]e conclude that plain error review is appropriate where an indictment omits an element of the offense for which a defendant is later convicted where there has been no objection.").

Accordingly, I would hold that review of insufficient charge claims raised for the first time on appeal be limited to plain error review.

Under the plain error doctrine, "where plain error has been committed and substantial rights have been affected thereby, the error may be noticed even though it was not brought to the attention of the trial court." *State v. Miller*, 122 Hawai'i 92, 100, 223 P.3d 157, 165 (2010). This court has held that it "will apply the plain error standard of review to correct errors which seriously affect the fairness, integrity, or public reputation of judicial proceedings, to serve the ends of justice, and to prevent the denial of fundamental rights." *Id.* (citation and emphasis omitted). In other words, the error must have prejudiced the defendant's substantial rights. *See Klinge*, 92 Hawai'i at 592–93, 994 P.2d at 524–25 (declining to find plain error where a challenged statement did not "prejudicially affect[ ] [the defendant's] substantial rights"); *State v. Marsh*, 68 Haw. 659, 661, 728 P.2d 1301, 1303 (1986) ("In light of the inconclusive evidence against Marsh, the particularly egregious misconduct of the prosecutor in presenting her personal views on the dispositive issues, and the lack of a prompt jury instruction specifically directed to the prosecutor's closing remarks, we hold that the prosecutor's conduct so prejudiced Marsh's right to a fair trial as to amount to 'plain error.'"); *State v. Toro*, 77 Hawai'i 340, 347, 884 P.2d 403, 410 (App.1994) ("[E]ven where error occurs, there will be no reversal where on the record as a whole, no prejudice to appellant has resulted." (quoting *State v. Nakamura*, 65 Haw. 74, 80, 648 P.2d 183, 187 (1982))); *see also Leos–Maldonado*, 302 F.3d at 1064 ("In order to affect [the defendant's] 'substantial rights,' the error 'must have affected the outcome of the District Court proceedings.' In other words, the error must be not only plain but also prejudicial." (citations omitted)).

To determine whether a defect in a charge has prejudiced the defendant, the appellate court may consider not only the charge, but the record below. *Sprattling*, 99 Hawai'i at 319, 55 P.3d at 283. When the record shows that the defendant actually knew the charges against him or her and/or had adequate notice of the charges against him or her to prepare a defense, the defendant's substantial rights have not been impaired; that is, no prejudice occurred. *See Israel*, 78 Hawai'i at 71, 890 P.2d at 308 (agreeing that "if a defendant actually knows the charges against him or her, that defendant's constitutional right to be informed of the nature and cause of the accusation is satisfied," so long as "the record must clearly demonstrate the defendant's actual knowledge"); *Hitchcock*, 123 Hawai'i at 379, 235 P.3d at 375; *Nkansah*, 699 F.3d at 752 ("When notice adequate to allow [a defendant] to prepare a defense is

provided, omissions in the indictment do not affect substantial rights." (quotation marks and citation omitted)).

I believe that the foregoing framework preserves a defendant's due process rights while also providing defendants an incentive to object to the sufficiency of the charge before the trial court. Indeed,

> a late challenge suggests a purely tactical motivation and is needlessly wasteful because pleading defects can usually be readily cured through a superseding indictment before trial. Additionally, the fact of the delay tends to negate the possibility of prejudice in the preparation of the defense, because one can expect that the challenge would have come earlier were there any real confusion about the elements of the crime charged. For all these reasons, indictments which are tardily challenged are liberally construed in favor of validity.

*Leos–Maldonado*, 302 F.3d at 1065 (citation omitted) (emphasis added).

For the foregoing reasons, I would review late challenges to the sufficiency of a charge only for plain error, and require a showing of prejudice before vacating a conviction.

### C. Apollonio was not prejudiced by the defective charge

Based on the foregoing, I would not vacate Apollonio's conviction on the ground that the charge did not allege the requisite state of mind. As stated above, Apollonio never objected to the sufficiency of the charge before the trial court or even the ICA. Accordingly, his belated claim should be reviewed only for plain error.

Although the charge did not contain a mens rea allegation, a review of the record below clearly shows that Apollonio knew the state of mind that the State was required to prove. As stated above, defense counsel contended during closing arguments that the State failed to prove the requisite state of mind. Defense counsel argued, inter alia, that "[t]his is not a negligence case[,]" and that the State failed to prove beyond a reasonable doubt that Apollonio "made a conscious disregard for a substantial and unjustifiable risk." Such arguments by defense counsel clearly demonstrate that the defense was well aware of the requisite state of mind, despite the omission of a mens rea allegation from the oral charge.

Notably, Apollonio never alleged before the trial court, the ICA, or this court that he did not understand the nature and cause of the accusation, or that he was misled in any way. Rather, he made a conclusory argument to this court that plain error review was warranted "[i]nasmuch as the defective charge infringed upon [his] due process right to be informed of the nature and cause of the accusation against him, as well as his rights to a fair trial and complete defense[.]"

In sum, Apollonio has not demonstrated that he was prejudiced by the defective charge and thus has failed to show how the error affected his substantial rights. Accordingly, Apollonio's insufficient charge claim, raised for the first time before this court, does not constitute plain error. I would therefore hold that his conviction should not be vacated on this ground.