**Electronically Filed
Intermediate Court of Appeals
CAAP-12-0000196
22-JAN-2015
09:04 AM**

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

---o0o---


STATE OF HAWAI'I, Plaintiff-Appellee,
vs.
MICKENSIE P. SOULENG, Defendant-Appellant


CAAP-12-0000196


APPEAL FROM THE DISTRICT COURT OF THE FIRST CIRCUIT
HONOLULU DIVISION
(CASE NO. 1DTC-11-002605)

JANUARY 22, 2015

NAKAMURA, CHIEF JUDGE, AND REIFURTH AND GINOZA, JJ.

OPINION OF THE COURT BY NAKAMURA, C.J.

Plaintiff-Appellee State of Hawai'i (State) charged Defendant-Appellant Mickensie P. Souleng (Souleng) by complaint with the offenses of (1) Accidents Involving Bodily Injury, in violation of Hawaii Revised Statutes (HRS) § 291C-12.6 (2007 & Supp. 2013);[1] and (2) Driving Without a License, in violation of

---

[1] HRS § 291C-12.6 provides in relevant part:

(a) The driver of any vehicle involved in an accident resulting in bodily injury to any person shall immediately stop the vehicle at the scene of the accident or as close thereto as possible but shall then forthwith return to and in every event shall remain at the scene of the accident until the driver has fulfilled the requirements of section 291C-14. Every such stop shall be made without obstructing traffic more than is necessary.

(continued...)

HRS § 286-102 (2007 & Supp. 2010).[2] After a bench trial, the District Court of the First Circuit (District Court)[3] found Souleng guilty as charged of both offenses.

On appeal, Souleng argues that: (1) both charges against him were defective for failing to allege a mens rea; (2) the Accidents Involving Bodily Injury charge was additionally defective for failing to allege essential elements under HRS § 291C-14; (3) based on <u>Melendez-Diaz v. Massachusetts</u>, 557 U.S. 305 (2009), the District Court violated his constitutional right to confront witnesses against him by admitting, over Souleng's objection, a letter signed by the Supervising Driver License Clerk (Exhibit 2), certifying that Souleng lacked a valid driver's license on the date in question; (4) without Exhibit 2, there was insufficient evidence to prove the charged Driving

---

[1] (...continued)
      (b) Any person who violates subsection (a) shall be guilty of a misdemeanor.

HRS § 291C-14 (2007 & Supp. 2013) provides in relevant part:

> (a) The driver of any vehicle involved in an accident resulting in injury to or death of any person or damage to any vehicle or other property which is driven or attended by any person shall give the driver's name, address, and the registration number of the vehicle the driver is driving, and shall upon request and if available exhibit the driver's license or permit to drive to any person injured in the accident or to the driver or occupant of or person attending any vehicle or other property damaged in the accident and shall give such information and upon request exhibit such license or permit to any police officer at the scene of the accident or who is investigating the accident and shall render to any person injured in the accident reasonable assistance, including the carrying, or the making of arrangements for the carrying, of the person to a physician, surgeon, or hospital for medical or surgical treatment if it is apparent that such treatment is necessary, or if such carrying is requested by the injured person; provided that if the vehicle involved in the accident is a bicycle, the driver of the bicycle need not exhibit a license or permit to drive.

[2] HRS § 286-102 provides in relevant part:

> (a) No person . . . shall operate any category of motor vehicles listed in this section without first being appropriately examined and duly licensed as a qualified driver of that category of motor vehicles.

[3] The Honorable Russel S. Nagata presided.

2

Without a License offense; and (5) there was insufficient evidence to support his conviction for the offense of Accidents Involving Bodily Injury.

As explained below, we hold that: (1) the charges were defective for the reasons articulated by Souleng; (2) based on Melendez-Diaz, the District Court violated Souleng's Sixth Amendment confrontation rights by admitting Exhibit 2 without requiring the Supervising Driver License Clerk who signed it to testify; (3) without Exhibit 2, there was insufficient evidence to support Souleng's conviction for Driving Without a License; and (4) the State presented sufficient evidence to support Souleng's conviction for Accidents Involving Bodily Injury. We reverse Souleng's conviction for Driving Without a License. We vacate his conviction for Accidents Involving Bodily Injury, and we remand the case with instructions to dismiss the charge for Accidents Involving Bodily Injury without prejudice.

BACKGROUND

At trial, the State called Wencheslao Sabio (Sabio), the complaining witness with respect to the charge of Accidents Involving Bodily Injury. Sabio testified that he was at a friend's house on Kopke Street, drinking and talking story on the sidewalk, when a vehicle, driven by Souleng, backed up and hit him on the side of his leg and knee. According to Sabio, he shouted for the vehicle to stop and moved towards a chair, when the vehicle "hit me again, so I told 'em, 'Oh, you know how to drive or what?'" Sabio did not see the vehicle coming towards him until he first got hit. Sabio's friend, Antonio Abellanosa (Abellanosa), told a neighbor to call the police. Sabio was later taken to Kaiser Hospital, and although there were no further injuries, he experienced physical pain.

Sabio testified that the vehicle stopped after hitting him twice and that Souleng got out of the vehicle and spoke to Sabio. However, Souleng did not provide Sabio with Souleng's name, address, and insurance information. Souleng did not provide Sabio with any information, but got back into his car and

3

drove away. Sabio testified that on the night of the incident, he had consumed two small cups of vodka, but was not intoxicated.

Sabio's friend, Abellanosa, testified that he lived on Kopke Street, and on the night of the charged incident, he was standing on the sidewalk in front of his house drinking with his friends when a vehicle backed up and "hit or bang" Sabio. Abellanosa did not know the driver's name, but identified Souleng in court as the driver. According to Abellanosa, he confronted Souleng and told Souleng that Souleng had struck Sabio, but Souleng responded that Sabio was "a liar[.]" Souleng did not give any information or offer to help Sabio, and when Abellanosa called the police, Souleng left. On cross-examination, Abellanosa testified that he had seen Souleng around before, but was not aware of where he lived.

At trial, the State offered Exhibit 2, which was a letter signed by Supervising Driver License Clerk Jacqueline Windrath as Custodian of Records for the Driver License Section. In the letter, Windrath certified, based on records of the Driver License Section, that "OUR RECORDS INDICATE THAT ON THE VIOLATION DATE, DEFENDANT DID NOT HAVE A VALID HAWAII DRIVER'S LICENSE." Windrath further certified and attested that the information in her letter was a "true, full, and correct summary of the voluminous original public records in the custody of the Driver License Section[.]" Souleng objected to Exhibit 2, arguing, among other things, that Exhibit 2 was testimonial and that its admission would violated his "[Sixth] Amendment right to confront the witness." The District Court, over Souleng's objection, admitted Exhibit 2 into evidence. Jacqueline Windrath, the person who signed the Exhibit 2 letter, did not testify.

The District Court found Souleng guilty of both the Driving Without a License and Accidents Involving Bodily Injury offenses, and it sentenced Souleng to fines totaling $400 and also imposed various fees and assessments. The District Court entered its Judgment on February 22, 2012, and this appeal followed.

4

DISCUSSION

I.

Souleng was charged with Accidents Involving Bodily Injury, in violation of HRS § 291C-12.6, and Driving Without a License, in violation of HRS § 286-102. Souleng did not object to the charges in the District Court and is challenging the sufficiency of the charges for the first time on appeal. Because Souleng did not challenge the sufficiency of the charges until his appeal, we apply the liberal construction standard. State v. Tominiko, 126 Hawai'i 68, 76, 266 P.3d 1122, 1130 (2011). Under this standard, "'we will not [vacate] a conviction based on a defective [charge] unless the defendant can show prejudice or that the [charge] cannot within reason be construed to charge a crime." Id. (quoting State v. Motta, 66 Haw. 89, 91, 657 P.2d 1019, 1020 (1983)).

II.

A.

Souleng argues that the charges against him for Accidents Involving Bodily Injury and Driving Without a License were defective for failing to allege a mens rea. The State does not dispute that to establish these offenses, it was required to prove that Souleng acted intentionally, knowingly, or recklessly.[4] See HRS §§ 702-204, 702-212 (1993) (imposing intentionally, knowingly, or recklessly as the default states of mind for criminal offenses in which no state of mind is specified, unless a legislative purpose to impose absolute liability plainly appears); State v. Ngo, 129 Hawai'i 30, 38-39, 292 P.3d 1260, 1268-69 (2013) (noting that the State acknowledged its obligation to set forth the applicable states of mind in the charge for an HRS § 291C-12 offense); State v. Matautia, 81 Hawai'i 76, 82, 912 P.2d 573, 579 (App. 1996) (noting the State's

---

[4] In its answering brief, the State agrees that the Accidents Involving Bodily Injury offense requires proof of an intentional, knowing, or reckless mens rea, but argues that the Accidents Involving Bodily Injury charge, which failed to allege a mens rea, was sufficient under the liberal construction standard. The State did not address Souleng's claim that the Driving Without a License charge was deficient for failing to allege a mens rea.

assertion that there was no legislative intent to impose absolute liability for an HRS § 286-102 offense and therefore the applicable states of mind were intentional, knowing, or reckless).

The statutes prescribing the offenses of Accidents Involving Bodily Injury and Driving Without a License do not specify a required state of mind. See notes 1 and 2, supra. Because a legislative purpose to impose absolute liability does not plainly appear, we conclude that the default states of mind of intentionally, knowingly, or recklessly apply to these offenses. See HRS §§ 702-204, 702-212.

B.

The State failed to allege a mens rea in either of the charges against Souleng for Accidents Involving Bodily Injury or for Driving Without a License. As noted, Souleng challenges the sufficiency of these charges for failing to allege the requisite mens rea for the first time on appeal. However, in State v. Apollonio, 130 Hawai'i 353, 357-59, 365, 311 P.3d 676, 680-82, 688 (2013), the Hawai'i Supreme Court considered a challenge to the sufficiency of a charge for failing to allege the requisite mens rea, which was raised for the first time in the defendant's application for writ of certiorari, and it concluded that the charge was insufficient. In rendering its decision, the supreme court stated: "[W]e adhere to this core principle: A charge that fails to charge a requisite state of mind cannot be construed reasonably to state an offense and thus the charge is dismissed without prejudice because it violates due process." Id. at 359, 311 P.3d at 682 (footnote omitted). The supreme court vacated the defendant's conviction and remanded the case to the trial court with instructions to dismiss the charge without prejudice. Id. at 363, 311 P.3d at 686.

Based on Apollonio, we conclude that the charges against Souleng for Accidents Involving Bodily Injury and Driving Without a License were insufficient for failing to allege a mens rea and therefore are subject to dismissal without prejudice.

6

III.

Souleng argues that the charge for Accidents Involving Bodily Injury was additionally defective "for failing to allege essential elements under HRS § 291C-14." We agree.

The count charging Souleng with the offense of Accidents Involving Bodily Injury alleged that he failed to "fulfill the requirements of [HRS §] 291C-14[,]" but did not specify the requirements of HRS § 291C-14 that Souleng allegedly failed to fulfill. In Ngo, 129 Hawai'i at 41, 292 P.3d at 1271, the Hawai'i Supreme Court concluded that a similar charge was defective. Based on Ngo, we conclude that the Accidents Involving Bodily Injury charge was defective for failing "to allege the specific requirements set forth under HRS § 291C-14(a) and (b) that [Souleng] was alleged to have contravened." See id. However, because we have already concluded that this charge is subject to dismissal without prejudice for failure to allege the requisite mens rea, we do not address whether the failure to allege the specific HRS § 291C-14 requirements that Souleng allegedly contravened would also require dismissal under the liberal construction standard.

IV.

Although we conclude that both the charges for Accidents Involving Bodily Injury and Driving Without a License were insufficient and are subject to dismissal without prejudice for failing to allege the requisite mens rea, based on the Hawai'i Supreme Court's recent decision in State v. Davis, 133 Hawai'i 102, 324 P.3d 912 (2014), we address Souleng's insufficiency of evidence claims. In Davis, the supreme court held that "a reviewing court is required under article I, section 10 of the Hawai'i Constitution to address a defendant's express claim of insufficiency of the evidence prior to remanding for a new trial based on a defective charge." Davis, 133 Hawai'i at 120, 324 P.3d at 930. Here, Souleng has made express claims that the evidence was insufficient to support both of his convictions.

Moreover, when reviewing the sufficiency of the evidence to determine whether retrial is precluded on double

jeopardy grounds, the Hawai'i Supreme Court has mandated that the "sufficiency of the evidence is reviewed *based only on the evidence that was properly admitted at trial*." State v. Wallace, 80 Hawai'i 382, 414 n.30, 910 P.2d 695, 727 n.30 (1996).[5] In other words, evidence which an appellate court determines was erroneously admitted by the trial court cannot be considered in deciding a defendant's sufficiency of the evidence claim on appeal. We therefore must first address Souleng's argument that Exhibit 2 was improperly admitted before we can decide his claim that there was insufficient evidence to support his conviction for Driving Without a License.

V.

Souleng argues that based on Melendez-Diaz, 557 U.S. 305 (2009), the District Court violated his rights under the Sixth Amendment's Confrontation Clause by admitting Exhibit 2 without requiring testimony by its author. He then argues that without Exhibit 2, there was insufficient evidence to show that he drove without a valid driver's license, proof that was essential to convict him of Driving Without a License.

The State concedes that under Melendez-Diaz, the District Court erred in admitting Exhibit 2. As explained below, we agree with the State's concession of error. We further conclude that without Exhibit 2, there was insufficient evidence to support Souleng's conviction for Driving Without a License.

A.

Exhibit 2 was a letter signed by Supervising Driver License Clerk Jacqueline Windrath (Windrath), as Custodian of Records for the Driver License Section. In the letter, Windrath

---

[5] In Wallace, the Hawai'i Supreme Court acknowledged that the United States Supreme Court had interpreted the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution to permit retrial "where the evidence offered by [the prosecution] and admitted by the trial court -- whether erroneously or not -- would have been sufficient to sustain a guilty verdict[.]" Wallace, 80 Hawai'i at 414 n.30, 910 P.2d at 727 n.30. The Hawai'i Supreme Court, however, stated that it was interpreting the Double Jeopardy Clause of the Hawai'i Constitution to give broader protection than the United States Constitution to criminal defendants. Id.

certified information based on the records of the Driver License Section. Next to the headings "Driver's License Number" and "Date Issued/Expiration/Type," Windrath stated: "NONE." Next to the heading "Additional Information," Windrath stated: "OUR RECORDS INDICATE THAT ON THE VIOLATION DATE, DEFENDANT DID NOT HAVE A VALID HAWAII DRIVER'S LICENSE."

Above Windrath's signature, the letter contains the following statement:

> The undersigned legal Custodian of Records does hereby certify under seal and attest that this summary has been compared with the original and that this is a true, full and correct summary of the voluminous original public records in the custody of the Driver License Section, Division of Motor Vehicle, Licensing and Permits, Department of Customer Services, City & County of Honolulu[.]

Souleng objected to the admission of Exhibit 2, arguing that it was testimonial and that its admission would violate his "[Sixth] Amendment right to confront the witness." The District Court admitted Exhibit 2 over Souleng's objection, ruling that it was non-testimonial and fell within the hearsay exception permitting proof of the nonoccurrence or nonexistence of a matter through the absence of public record or entry.[6] Windrath did not testify at trial.

---

[6] The District Court cited the "[a]bsence of public record or entry" hearsay exception set forth in Hawaii Rules of Evidence Rule 803(b)(10) (1993), which provides:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> . . . .
>
> (b)   Other exceptions.
>
> . . . .
>
> (10)   Absence of public record or entry.  To prove the absence of a record, report, statement, or data compilation, in any form, or the nonoccurrence or nonexistence of a matter of which a record, report, statement, or data compilation, in any form, was regularly made and preserved by a public office or agency, evidence in the form of a certification in accordance with rule 902, or testimony, that diligent search failed to disclose the record, report, statement, or data compilation, or entry.

B.

In Melendez-Diaz, the police seized plastic bags containing substances which they submitted for chemical analysis. Melendez-Diaz, 557 U.S. at 308. The trial court admitted certificates of forensic analysis which reported that the substances seized by the police contained cocaine as well as the weight of the seized bags. Id. at 308-09. The authors of the certificates did not testify at trial. Id. at 309. The Supreme Court considered whether the admission of the certificates of forensic analysis violated the defendant's rights under the Confrontation Clause.

The Court concluded that the certificates of analysis fell within the "core class of testimonial statements" because they were affidavits, functionally identical to live, in-court testimony by the authors of the certificates, made for the purpose of proving a fact in question, namely, whether the substance seized by the police was cocaine, and "made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial[.]" Id. at 310-11 (internal quotation marks and citations omitted). The Court emphasized that the certificates were prepared for trial purposes, noting that "the *sole purpose* of the [certificates] was to provide 'prima facie evidence of the composition, quality, and the net weight' of the analyzed substance[.]" Id. at 311 (citation omitted). The Court held that because the certificates were testimonial statements, absent a showing that the analysts were unavailable to testify at trial and that the defendant had a prior opportunity to cross-examine them, the admission of the certificates violated the defendant's rights under the Confrontation Clause. Id.

Relevant to our case, the Court in Melendez-Diaz addressed the argument that "the analysts' affidavits are admissible without confrontation because they are 'akin to the types of official and business records admissible at common law.'" Id. at 321. The Court rejected this argument, concluding

10

that "the affidavits do not qualify as traditional official or business records, and even if they did, their authors would be subject to confrontation nonetheless." Id.

The Court explained that "[d]ocuments kept in the regular course of business may ordinarily be admitted at trial despite their hearsay status. But that is not the case if the regularly conducted business activity is the production of evidence for use at trial." Id. (citation omitted). The Court stated that the analysts' certificates, like police reports generated by law enforcement officials, do not qualify as business or public records because they are "'calculated for use essentially in the court, not in the business.'" Id. at 321-22 (citation omitted).

The Court further stated:

> The dissent identifies a single class of evidence which, though prepared for use at trial, was traditionally admissible: a clerk's certificate authenticating an official record -- or a copy thereof -- for use as evidence. But a clerk's authority in that regard was narrowly circumscribed. He was permitted "to certify to the correctness of a copy of a record kept in his office," but had "no authority to furnish, as evidence for the trial of a lawsuit, his interpretation of what the record contains or shows, or to certify to its substance or effect." . . . A clerk could by affidavit *authenticate* or provide a copy of an otherwise admissible record, but could not do what the analysts did here: *create* a record for the sole purpose of providing evidence against a defendant.

Id. at 322-23 (citations and footnote omitted).

The Court then discussed evidence directly analogous to the State's Exhibit 2 in Souleng's case:

> Far more probative here are those cases in which the <u>prosecution sought to admit into evidence a clerk's certificate attesting to the fact that the clerk had searched for a particular relevant record and failed to find it.</u> Like the testimony of the analysts in this case, the clerk's statement would serve as substantive evidence against the defendant whose guilt depended on the nonexistence of the record for which the clerk searched. Although the clerk's certificate would qualify as an official record under respondent's definition -- it was prepared by a public officer in the regular course of his official duties -- and although the clerk was certainly not a "conventional witness" under the dissent's approach, the clerk was nonetheless subject to confrontation.

Id. at 323 (footnote and citations omitted) (emphasis added).

The Court explained the relationship between the business-and-official-records hearsay exceptions and the Confrontation Clause:

> As we stated in Crawford: "Most of the hearsay exceptions covered statements that by their nature were not testimonial -- for example, business records or statements in furtherance of a conspiracy." 541 U.S., at 56, 124 S.Ct. 1354. Business and public records are generally admissible absent confrontation not because they qualify under an exception to the hearsay rules, but because -- having been created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial -- they are not testimonial. Whether or not they qualify as business or official records, the analysts' statements here -- prepared specifically for use at petitioner's trial -- were testimony against petitioner, and the analysts were subject to confrontation under the Sixth Amendment.

Id. at 324.[1]

_____

[1] In Melendez-Diaz, the Court observed that the burden of having to call live witnesses may be reduced by "notice-and-demand" statutes, which "require the prosecution to provide notice to the defendant of its intent to use an analyst's report as evidence at trial, after which the defendant is given a period of time in which he may object to the admission of the evidence absent the analyst's appearance live at trial." Melendez-Diaz, 557 U.S. at 326. The Court indicated that these statutes, which require a defendant "to assert (or forfeit by silence)" his or her Confrontation Clause rights before trial, were permissible under the United States Constitution. Id. at 326-27. In response to Melendenz-Diaz, Rule 803(10) of the Federal Rules of Evidence (FRE) was amended in 2013 to incorporate the substance of the "notice-and-demand" procedure approved by the Melendez-Dias Court. See FRE Rule 803 Advisory Committee Notes regarding 2013 Amendments. As amended, FRE Rule 803(10) provides:

The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness:

. . . .

(10) Absence of a Public Record. Testimony -- or a certification under Rule 902 -- that a diligent search failed to disclose a public record or statement if:

    (A)    the testimony or certification is admitted to prove that

        (i)    the record or statement does not exist; or

        (ii)    a matter did not occur or exist, if a public office regularly kept a record or statement for a matter of that kind; and

    (B)    in a criminal case, a prosecutor who intends to offer a certification provides written notice of that intent

(continued...)

C.

Based on <u>Melendez-Diaz</u>, we conclude that Exhibit 2 was a testimonial statement and that the District Court's admission of Exhibit 2 violated Souleng's Sixth Amendment confrontation rights.

Windrath, the person who signed the Exhibit 2 letter, certified that Souleng did not have a valid driver's license on the "violation date." It appears that this certification was based on the absence of records showing that Souleng had a driver's licence. Exhibit 2 therefore appears to closely match a specific example of evidence that the Court in <u>Melendez-Diaz</u> concluded would be subject to confrontation, namely: "a clerk's certificate attesting to the fact that the clerk had searched for a particular relevant record and failed to find it[,]" where "the clerk's statement would serve as substantive evidence against the defendant whose guilt depended on the nonexistence of the record for which the clerk searched." <u>Id.</u> at 323.

We conclude that Exhibit 2 was testimonial in that it was prepared for use at trial; created "for the sole purpose of providing evidence against [Souleng]"; set forth Windrath's "interpretation of what the record[s] [of the Driver License Section] contain[] or show[]"; and served as "substantive evidence against [Souleng]." <u>Id.</u> at 321-23. Windrath, who signed the Exhibit 2 letter and certified the accuracy of the information contained in the letter, did not testify at trial, and the State did not show that Windrath was unavailable and that Souleng had a prior opportunity to cross-examine Windrath. <u>Id.</u> at 311. Accordingly, the District Court erred in admitting Exhibit 2.

---

[1]/ (...continued)
> at least 14 days before trial, and the defendant does not object in writing within 7 days of receiving the notice -- unless the court sets a different time for the notice or the objection.

No similar amendment has been made to Hawaii Rules of Evidence Rule 803(b)(10) (1993).

D.

Because Exhibit 2 was improperly admitted in evidence, we cannot consider it in determining whether there was sufficient evidence to support Souleng's conviction for Driving Without a License.  Wallace, 80 Hawai'i at 414 n.30, 910 P.2d at 727 n.30. Exhibit 2 was the only evidence offered by the State to prove the essential element that Souleng did not have a valid driver's license on the date he was charged with committing the Driving Without a License offense.  The State does not argue otherwise. We conclude that without Exhibit 2, there was insufficient evidence to support Souleng's conviction for Driving Without a License.  Accordingly, we reverse this conviction.

VI.

Souleng argues that there was insufficient evidence to convict him of the Accidents Involving Bodily Injury offense because the State did not prove that he "knew that Sabio received bodily injury."  We disagree.

As noted, the Accidents Involving Bodily Injury offense requires proof of an intentional, knowing, or reckless mens rea. Thus, the State was not required to prove that Souleng acted with a knowing state of mind with respect to whether Sabio had "received" bodily injury.  Instead, the State could establish the requisite mens rea by showing that Souleng acted recklessly regarding whether he had been "involved in an accident resulting in bodily injury to any person[.]"  See HRS § 291C-12.6(a).

For purposes of the Accidents Involving Bodily Injury offense, "[b]odily injury" is defined to include "physical pain[.]"  HRS § 291C-1 (2007).  The evidence showed that Souleng struck Sabio twice when Souleng backed his vehicle into Sabio; that Souleng's vehicle hit Sabio on the side of Sabio's leg and knee; that Sabio's friend confronted Souleng about hitting Sabio; and that Sabio experienced physical pain and was taken to the hospital.  We conclude that when viewed in the light most favorable to the State, there was sufficient evidence to show that Souleng acted with at least a reckless state of mind

14

regarding whether he had been "involved in an accident resulting in bodily injury to any person[.]"  See HRS § 291C-12.6(a).

CONCLUSION

Based on the foregoing, we reverse the District Court's Judgment with respect to Souleng's conviction for Driving Without a License.  We vacate the District Court's Judgment with respect to Souleng's conviction for Accidents Involving Bodily Injury, and we remand the case with instructions to dismiss without prejudice the charge against Souleng for Accidents Involving Bodily Injury.

On the briefs:

Pedric T. Arrisgado
Deputy Public Defender
for Defendant-Appellant

James M. Anderson
Deputy Prosecuting Attorney
City and County of Honolulu
for Plaintiff-Appellee

*Craig H. Nakamura*

*Lawrence M Reifurth*

*Daniel R. Foley*