NOT FOR PUBLICATION IN WEST'S HAWAII REPORTS OR THE PACIFIC REPORTER

**Electronically Filed
Intermediate Court of Appeals
CAAP-19-0000533
14-MAR-2022
07:57 AM
Dkt. 49 SO**

NO. CAAP-19-0000533

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


STATE OF HAWAI'I, Plaintiff-Appellee,
v.
COREY L. ULGARAN, Defendant-Appellant

APPEAL FROM THE DISTRICT COURT OF THE FIRST CIRCUIT
HONOLULU DIVISION
(CASE NO. 1DTC-18-018477)


SUMMARY DISPOSITION ORDER
(By: Ginoza, C.J., and Hiraoka and Wadsworth, JJ.)

Defendant-Appellant Corey L. Ulgaran (**Ulgaran**) appeals from the June 20, 2019 Notice of Entry of Judgment and/or Order and Plea/Judgment (**Judgment**) and the September 9, 2019 Amended Notice of Entry of Judgment and/or Order and Plea/Judgment (**Amended Judgment**), entered in the District Court of the First Circuit, Honolulu Division (**District Court**).[1] Following a bench trial, Ulgaran was convicted of Accidents Involving Bodily Injury, in violation of Hawaii Revised Statutes (**HRS**) § 291C-12.6(a)[2] (**Count 1**), and Operating a Vehicle Under the

---

[1] The Honorable Philip M. Doi presided.

[2] At the time of the alleged offense, HRS § 291C-12.6(a) (2007 & Supp. 2017) provided:

> **Accidents involving bodily injury.** (a) The driver of any vehicle involved in an accident resulting in bodily injury to any person shall immediately stop the vehicle at the scene of the accident or as close thereto as possible but shall then forthwith return to and in every event shall remain at the scene of the accident until the driver has

continue...

Influence of an Intoxicant (**OVUII**), in violation of HRS §§ 291E-61(a)(1), (b)(1)[3/] (**Count 2**).

On appeal, Ulgaran contends that: (1) there was no substantial evidence to support the convictions on Counts 1 and 2; and (2) the charge in Count 1 was fatally defective.

After reviewing the record on appeal and the relevant legal authorities, and giving due consideration to the issues raised and the arguments advanced by the parties, we resolve Ulgaran's contentions as follows and vacate the Judgment and the Amended Judgment as to Count 1:

(1) We first address Ulgaran's second contention. Ulgaran argues that the charge in Count 1 was fatally defective because it failed to include the attendant circumstance that "[e]very such stop shall be made without obstructing traffic more than is necessary." HRS § 291C-12.6(a).

The Hawaiʻi Supreme Court's decision in State v. Baker, 146 Hawaiʻi 299, 463 P.3d 956 (2020), is dispositive of this contention. In Baker, the supreme court considered the sufficiency of a charge brought against a driver for failure to stop at the scene of an accident involving vehicle damage, in

---

...continue

fulfilled the requirements of section 291C-14. Every such stop shall be made without obstructing traffic more than is necessary.

The relevant parts of HRS § 291C-14 are quoted *infra*.

[3/] At the time of the alleged offense, HRS § 291E-61 (2007 & Supp. 2017) provided, in relevant part:

**Operating a vehicle under the influence of an intoxicant.** (a) A person commits the offense of operating a vehicle under the influence of an intoxicant if the person operates or assumes actual physical control of a vehicle:

(1) While under the influence of alcohol in an amount sufficient to impair the person's normal mental faculties or ability to care for the person and guard against casualty[.]

. . . .

(b) A person committing the offense of operating a vehicle under the influence of an intoxicant shall be sentenced without possibility of probation or suspension of sentence as follows:

. . . .

violation of HRS § 291C-13.  At that time, HRS § 291C-13 (Supp. 2008) stated, in relevant part:

> **Accidents involving damage to vehicle or property.**
> The driver of any vehicle involved in an accident resulting only in damage to a vehicle or other property that is driven or attended by any person shall immediately stop such vehicle at the scene of the accident or as close thereto as possible, but shall forthwith return to, and in every event shall remain at, the scene of the accident until the driver has fulfilled the requirements of section 291C-14.  Every such stop shall be made without obstructing traffic more than is necessary.

See Baker, 146 Hawaiʻi at 302 n.1, 463 P.3d 959 n.1.  The supreme court construed this language to mean that "[a] driver . . . does not violate the statute by not stopping at the scene, by not stopping as close as possible to the scene, or not returning to the scene of the accident, if doing so would prevent a traffic hazard that would otherwise result."  Id. at 307, 463 P.3d at 964.

In Baker, as here, the defendant challenged the sufficiency of the failure-to-stop charge for the first time on appeal.  Id. at 308, 463 P.3d at 965.  The supreme court thus applied the liberal construction standard in reviewing the charge.  Id. (citing State v. Motta, 66 Haw. 89, 90, 657 P.2d 1019, 1019-20 (1983); State v. Wells, 78 Hawaiʻi 373, 381, 894 P.2d 70, 78 (1995)).  The court nevertheless ruled:

> The State in this case did not specify in the complaint that [the defendant] did not stop either at the accident scene or stop at the location closest to the accident scene and forthwith return thereto without obstructing traffic more than is necessary.  The State's omission of this statutory qualification did not provide [the defendant] with fair notice of the elements of the offense charged.  In fact, the charge did not include any reference to the language "without obstructing traffic more than is necessary" or include language similar to it.  The failure to include the statutory language resulted in this element of the charge having a common meaning that differed from the express statutory requirements, and thus neither the complaint nor the oral charge can be reasonably construed to charge an offense.  Accordingly, the deficient charge deprived [the defendant] of the right to due process. As a result, the State failed to state an offense, and the conviction based upon it cannot be sustained.

Baker, 146 Hawaiʻi at 308, 463 P.3d at 965 (citations omitted).

Here, Ulgaran was charged in Count 1 with failing to stop at the scene of an accident involving bodily injury, in

violation of HRS § 291C-12.6(a).[4] Other than the type of damage involved, the operative provisions of HRS § 291C-13 substantially mirror those of HRS § 291C-12.6. Both statutes require a driver who is involved in an accident that causes a specified harm to immediately stop at the scene of the accident or stop "as close thereto as possible" and "forthwith return" to the scene. HRS § 291C-12.6(a); HRS § 291C-13(a); see Baker, 146 Hawaiʻi at 307, 463 P.3d at 964. Both statutes also require that "[e]very such stop shall be made without obstructing traffic more than is necessary." HRS § 291C-12.6(a); HRS § 291C-13. However, the charge against Ulgaran, like its counterpart in Baker, failed to specify that Ulgaran did not stop at the accident scene or stop at the location closest to the accident scene and forthwith return thereto without obstructing traffic more than is necessary. Under Baker, the failure to include the statutory language "without obstructing traffic more than is necessary," or similar language, rendered Count 1 deficient and deprived Ulgaran of the right to due process. See Baker, 146 Hawaiʻi at 308, 463 P.3d at 965. Accordingly, the Judgment and the Amended Judgment as to Count 1 must be vacated, and on remand, the District Court must dismiss Count 1 without prejudice. See State v. Apollonio, 130 Hawaiʻi 353, 358-59, 363, 311 P.3d 676, 681-82, 686 (2013).

(2) Ulgaran contends there was no substantial evidence to support her convictions on Counts 1 and 2.

---

[4]    The charge in Count 1 of the Amended Complaint stated, in relevant part:

> COUNT 1: On or about November 25, 2018, in the City and County of Honolulu, State of Hawaiʻi, COREY L. ULGARAN, as the driver of a vehicle involved in an accident resulting in bodily injury to Sara [Hatfield], did intentionally, knowingly or recklessly fail to immediately stop the vehicle at the scene of the accident or as close thereto as possible, and did intentionally, knowingly or recklessly fail to forthwith return to and in every event remain at the scene of the accident and fulfill the requirements of Section 291C-14 of the Hawaiʻi Revised Statutes, thereby committing the offense of Accidents Involving Bodily Injury, in violation of Section 291C-12.6(a) of the Hawaiʻi Revised Statutes.

The oral charge contained substantially the same language.

We review the sufficiency of the evidence to support a conviction as follows:

> [E]vidence adduced in the trial court must be considered in the strongest light for the prosecution . . .; the same standard applies whether the case was before a judge or jury.  The test on appeal is not whether guilt is established beyond a reasonable doubt, but whether there was substantial evidence to support the conclusion of the trier of fact.  Indeed, even if it could be said in a bench trial that the conviction is against the weight of the evidence, as long as there is substantial evidence to support the requisite findings for conviction, the trial court will be affirmed.
>
> "Substantial evidence" as to every material element of the offense charged is credible evidence which is of sufficient quality and probative value to enable [a person] of reasonable caution to support a conclusion.  And as trier of fact, the trial judge is free to make all reasonable and rational inferences under the facts in evidence, including circumstantial evidence.

State v. Matavale, 115 Hawaiʻi 149, 157-58, 166 P.3d 322, 330-31 (2007) (quoting State v. Batson, 73 Haw. 236, 248-49, 831 P.2d 924, 931 (1992)).

**Count 1**:[5/]

In order to convict Ulgaran for a violation of HRS § 291C-12.6(a), the State was required to prove beyond a reasonable doubt that:  (1) Ulgaran was driving a vehicle that was involved in an accident resulting in bodily injury to another person; and (2) Ulgaran did not (a) immediately stop at the scene or stop as close thereto as possible and forthwith return to the scene without obstructing traffic more than is necessary; or (b) give the information required by HRS § 291C-14[6/] to any person

---

[5/]     Although we have determined the charge for Count 1 is defective, we review the sufficiency of the evidence as to Count 1 because Ulgaran also expressly contends on appeal that there was insufficient evidence to support her conviction on Count 1.  See State v. Davis, 133 Hawaiʻi 102, 120, 324 P.3d 912, 930 (2014)(holding that "a reviewing court is required under article I, section 10 of the Hawaiʻi Constitution to address a defendant's express claim of insufficiency of the evidence prior to remanding for a new trial based on a defective charge").

[6/]     At the time of the alleged offense, HRS § 291C-14 (Supp. 2017) provided, in relevant part:

> **Duty to give information and render aid.** (a) The driver of any vehicle involved in an accident resulting in injury to . . . any person . . . shall give the driver's

continue...

injured in the accident and any police officer at the scene, and render to any person injured in the accident reasonable assistance. See HRS § 291C-12.6(a); HRS § 291C-14; see also Baker, 146 Hawaiʻi at 309, 463 P.3d at 966 (stating the elements to prove a violation of HRS § 291C-13). The State was also required to prove that Ulgaran committed each element of the offense intentionally, knowingly, or recklessly. See HRS §§ 291C-12.6, 701-114, 702-204.

Ulgaran contends there was insufficient evidence to convict her on Count 1, because there was substantial evidence that she stopped at the scene of the accident and gave Hatfield the information required by HRS § 291C-14(a). Ulgaran argues that under the statute, she was required to provide only "her name, address, registration number of the vehicle she was driving and, if available, her driver's license[,]" and that the papers Ulgaran gave Hatfield included the certificate of title for the truck Ulgaran was driving, which the police were then able to use to locate Ulgaran.

At trial, complaining witness Sara Hatfield (**Hatfield**) testified that while driving on November 25, 2018, at about 7:00 in the evening, she arrived at a four-way stop. Hatfield was stopped and waiting for another car to turn, when her car was hit from behind by a truck. Hatfield identified Ulgaran as the driver and only occupant of the truck. Hatfield got out of her car, approached the truck, and asked Ulgaran for "her paperwork, insurance, registration and driver's license." Hatfield "was handed a whole stack of random papers[,]" which "didn't have any sort of identification, didn't have registration, [and] didn't

---

6/ ...continue
name, address, and the registration number of the vehicle the driver is driving, and shall upon request and if available exhibit the driver's license or permit to drive to any person injured in the accident . . . and shall give such information and upon request exhibit such license or permit to any police officer at the scene of the accident or who is investigating the accident and shall render to any person injured in the accident reasonable assistance, including the carrying, or the making of arrangements for the carrying, of the person to a physician, surgeon, or hospital for medical or surgical treatment if it is apparent that such treatment is necessary, or if such carrying is requested by the injured person[.]

have insurance." Hatfield testified that she did not know if the truck's certificate of title was among the papers. Ulgaran did not give her address to Hatfield.

After another driver asked Hatfield to move her car, Hatfield and Ulgaran both turned left and moved their vehicles to the side of the road, where they "pick[ed] up where [they] had left off." Hatfield called her mother, and after talking to her, called the police. Hatfield testified: "And [Ulgaran] said that she had to go and I told her, I said oh, wait, I have the police on hold right now. And then next thing I know, she hopped in her truck and took off." When the police arrived, Hatfield told them that "[she] saw [Ulgaran] drive straight into an apartment complex area that [Hatfield] couldn't get into because there's security." Hatfield gave the police the papers that Ulgaran had handed her.

Honolulu Police Department (**HPD**) Corporal Joel Dadoy (**Cpl. Dadoy**) testified that on November 25, 2018, at about 7:00 p.m., he responded to a report of a motor vehicle collision at the intersection of Ala Kapuna Street and Moanalua Road. Cpl. Dadoy found one driver at the scene who reported that another vehicle had struck her, the two drivers had begun exchanging information, and the other driver had then left the scene. Hatfield gave Cpl. Dadoy a certificate of title for the vehicle that had struck her. Cpl. Dadoy began running checks on the registered owner of the vehicle based on the title and found a "possible address of the vehicle in the Ala Kapuna area[,]" at 1270 Ala Kapuna. Cpl. Dadoy then sent a second HPD officer to attempt to locate the vehicle. Because Hatfield complained of pain in her back, Cpl. Dadoy called EMS and stayed with Hatfield.

HPD Officer Deseray Tibon-Rodriguez (**Officer Tibon-Rodriguez**) testified that she was involved in investigating the collision on November 25, 2018. Upon arriving at the scene, Cpl. Dadoy instructed her "to attempt to locate [the] suspect vehicle and the suspect as well if [possible]." HPD "put out an APB for . . . a dark-in-color Chevy Silverado bearing . . . handicap plates." Officer Tibon-Rodriguez "entered the Ala Kapuna, [where] there's a secured area," which was "the last known

direction where the vehicle went." Officer Tibon-Rodriguez "was flagged down by a security guard who stated I seen the truck, it went this way." The security guard escorted Officer Tibon-Rodriguez "to the back side of one of the apartment buildings and then pointed out the truck." The truck and its license plate matched the description the officer had, and there was damage to the truck's front end. Based on the truck's parking plaque, the security guard was able to identify Ulgaran's apartment building. With that information, Officer Tibon-Rodriguez and other officers went to the building and located Ulgaran. After Ulgaran proved to be uncooperative, Officer Tibon-Rodriguez informed Cpl. Dadoy, who then "informed [Officer Tibon-Rodriguez] that the registered owner of the vehicle was actually en[ ]route and [Cpl. Dadoy] instructed [Officer Tibon-Rodriguez] that [she] would be reading him his rights and try[ing] to get a statement to establish the disposition of the vehicle."

Ulgaran argues that the certificate of title that Cpl. Dadoy used to locate Ulgaran "presumably had the information required by HRS § 291C-14 . . . on it." However, the certificate of title is not part of the record, and Ulgaran concedes that it was not entered into evidence at trial.[7] Morever, the record includes testimony by Officer Tibon-Rodriguez (see supra) suggesting that Ulgaran was not the registered owner of the vehicle involved in the collision. See Matavale, 115 Hawai'i at 158, 166 P.3d 322 at 331 (the trial judge is free to make all reasonable and rational inferences under the facts in evidence). In addition, Hatfield testified that the papers Ulgaran gave her following the collision did not include Ulgaran's identification or address. The District Court found the State's witnesses to be credible, a determination that we will not disturb on appeal. See State v. Eastman, 81 Hawai'i 131, 139, 913 P.2d 57, 65 (1996).

---

[7] Ulgaran asserts that this court may take judicial notice of "the contents of the [certificate of title] form." We decline to do so. The contents of the certificate of title for the truck at issue are unknown and subject to reasonable dispute, and judicial notice is thus improper. See Hawai'i Rules of Evidence Rule 201(b).

Upon review of the record, we conclude there was substantial evidence that Ulgaran drove a vehicle that was involved in an accident resulting in bodily injury to Hatfield, and Ulgaran did not give all of the information required by HRS § 291C-14 to Hatfield at the accident scene. Accordingly, on this record, the evidence was sufficient to support Ulgaran's conviction on Count 1.

**<u>Count 2</u>**:

In order to convict Ulgaran of OVUII, the State was required to prove beyond a reasonable doubt that Ulgaran operated a vehicle "[w]hile under the influence of alcohol in an amount sufficient to impair [her] normal mental faculties or ability to care for [herself] and guard against casualty[.]" HRS § 291E-61(a)(1). "'Impair' means to weaken, to lessen in power, to diminish, to damage, or to make worse by diminishing in some material respect or otherwise affecting in an injurious manner." HRS § 291E-1 (2007).

At trial, Officer Tibon-Rodriguez testified that when she arrived at Ulgaran's apartment, she knocked on the door several times and received no response. Then, a young child answered the door. The officer asked the child if their mother or father was home, and said that the police needed to speak to them. The child "said my mom's home, she's sleeping." The child then left the doorway, and Officer Tibon-Rodriguez waited five to ten minutes at the open front door. On multiple occasions, the officer "yelled out Police, ma'am, we need to speak to you involving [a] motor vehicle incident, can you please come out, can you please talk to us." Eventually, Ulgaran approached the door wearing a towel.

When asked at trial what she observed about Ulgaran, Officer Tibon-Rodriguez testified:

> [Ulgaran] showed signs of intoxication. When I first saw, even though she was several feet away[,] in the doorway, I could smell a strong odor of alcohol emitting from her.
>
> . . . .

> . . . I could observe what appeared to be the odor of alcohol type beverage emitting from her breath and her body as she spoke to me. Her eyes appeared to be red and glassy and her speech was slightly slurred and she also appeared to be emotional.

Ulgaran handed her driver's license to Officer Tibon-Rodriguez and said that she needed to get dressed. The officer said "go ahead and get dressed and if you can just come back to the doorway so we can talk." Ulgaran "went back into the back area out of sight," and Officer Tibon-Rodriguez then waited another five to ten minutes. The officer "started calling out to [Ulgaran] again, ma'am, are you okay, ma'am, are you okay, do you need police assistance?" After waiting about 15 minutes, Officer Tibon-Rodriguez entered the apartment, where she eventually found Ulgaran "crouched over the bed on the phone crying[.]" Ulgaran told Officer Tibon-Rodriguez, "I'm not coming out until my sister gets here, something along those lines." Officer Tibon-Rodriguez then left the apartment and spoke to Cpl. Dadoy.

Dennis Kegley (**Kegley**) testified that he was the security guard at 1270 Ala Kapuna, and was on duty on November 25, 2018, when the police arrived. The police gave him a license plate number and description of the vehicle they were looking for, and Kegley was the first to find it. At trial, Kegley described the vehicle as follows:

> And the things that I noticed about the vehicle was there -- it was parked kind of catty-cornered like it had been hastily backed -- it was backed in, not pulled in. Looked like it was kind of catty-cornered over the other parking stall. <u>There was engine heat like it had just been running</u>. There was damage to the front of the vehicle, I believe it was the driver's side bumper.

(Emphasis added.) Kegley showed the police where the vehicle was, "look[ed] up the vehicle information[,] and identified that the resident lived [in Unit] 105."

Ulgaran contends there was no direct evidence that she operated a vehicle while under the influence of an intoxicant, because: (1) Hatfield interacted with Ulgaran at the scene of the collision and did not testify to any objective indicia of alcohol consumption by Ulgaran; and (2) after the collision, Ulgaran was able to exchange information with Hatfield and drive her truck to another location. Ulgaran also argues that Officer

Tibon-Rodriguez's observations at Ulgaran's apartment "[a]t best . . . established that Ulgaran had consumed alcohol <u>after</u> the accident and not prior to the accident."

Ulgaran's arguments concern the weight of the evidence. We decline to pass upon such issues, which are within the province of the trier of fact – here, the District Court. <u>See</u> <u>State v. Stocker</u>, 90 Hawaiʻi 85, 90, 976 P.2d 399, 404 (1999). We review instead whether there is substantial evidence to support the requisite findings for conviction, considering the evidence in the strongest light for the prosecution. <u>See</u> <u>Matavale</u>, 115 Hawaiʻi at 158, 166 P.3d at 331. Here, the State presented credible evidence, through the testimony of Officer Tibon-Rodriguez, that Ulgaran exhibited several indicia of intoxication shortly after driving a vehicle.[8] Those indicia included red and glassy eyes, slightly slurred speech, and an odor of alcohol from Ulgaran's breath and body. The State also presented credible evidence, through Hatfield's testimony, that the vehicle driven by Ulgaran had recently struck another vehicle stopped at an intersection. From the evidence presented at trial, the District Court could reasonably infer that Ulgaran drove while intoxicated in an amount sufficient to weaken or diminish her normal mental faculties or ability to guard against casualty. <u>See</u> <u>id.</u>

Upon review of the record, we thus conclude there was substantial evidence that Ulgaran operated a vehicle while under the influence of alcohol in an amount sufficient to impair her normal mental faculties or ability to guard against casualty. Accordingly, on this record, the evidence was sufficient to support Ulgaran's conviction on Count 2.

For the reasons discussed above, we vacate the June 20, 2019 Notice of Entry of Judgment and/or Order and Plea/Judgment, and the September 9, 2019 Amended Notice of Entry of Judgment and/or Order and Plea/Judgment, entered in the District Court of

---

[8] Kegley's testimony – that when he found the truck, "[t]here was engine heat like it had just been running" – further supports the reasonable inference that only a short time elapsed between when Ulgaran was driving the truck and when HPD located both the truck and Ulgaran. <u>See</u> <u>Matavale</u>, 115 Hawaiʻi at 158, 166 P.3d at 331.

the First Circuit, Honolulu Division, as to Count 1.  The case is remanded to the District Court with instructions to dismiss Count 1 without prejudice.

We affirm the June 20, 2019 Notice of Entry of Judgment and/or Order and Plea/Judgment, and the September 9, 2019 Amended Notice of Entry of Judgment and/or Order and Plea/Judgment, as to Count 2.

DATED:  Honolulu, Hawaiʻi, March 14, 2022.


On the briefs:

Jon N. Ikenaga,
Deputy Public Defender
for Defendant-Appellant.

Chad M. Kumagai,
Deputy Prosecuting Attorney,
City & County of Honolulu,
for Plaintiff-Appellee.

/s/ Lisa M. Ginoza
Chief Judge

/s/ Keith K. Hiraoka
Associate Judge

/s/ Clyde J. Wadsworth
Associate Judge